In the United States District Court
for the Northern District of Alabama,
Southern Division

| | |
|---|---|
| **Studiorotan LLC,**<br>*Plaintiff,*<br><br>v.<br><br>**Vickii J. Howell and**<br>**M.O.V.E. Gulf Coast CDC,**<br>*Defendants*. | Jury Trial Demanded |

# COMPLAINT

Plaintiff Studiorotan LLC files this complaint against Defendants Vickii J. Howell and M.O.V.E. Gulf Coast Community Development Corporation stating as follows:

## PARTIES

1. Plaintiff studiorotan LLC is an Alabama limited liability company with its primary business in Jefferson County, Alabama ("studio|rotan").

2. Defendant Vickii J. Howell is an adult resident of Mobile County, Alabama ("Howell").

3. Defendant M.O.V.E. (Making Opportunities Viable for Everyone) Gulf Coast Community Development Corporation is an Alabama non-profit corporation doing business as M.O.V.E. Gulf Coast CDC with its primary business in Mobile County, Alabama ("M.O.V.E.").

## JURISDICTION AND VENUE

4. This Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. § 1331 and 28 U.S.C. § 1338(a), as the action arises under the federal Copyright Act, 17 U.S.C. § 101 *et seq*.

5. This Court has supplemental jurisdiction over Plaintiff's state law claims pursuant to 28 U.S.C. § 1367(a) because the state law claims are so related to the claims under federal law that they form part of the same case or controversy under Article III of the United States Constitution.

6. Venue is proper in this Court pursuant to 28 U.S.C. § 1391(b)(2) because a substantial part of the events or omissions giving rise to the claim occurred in the Northern District of Alabama. Specifically, most of the work performed in furtherance of the contract at issue was conducted within this District, and the parties carried out significant obligations under the agreement here. As such, this District has a substantial connection to the facts underlying this action.

## RELEVANT FACTS

### Studio|rotan

7. studio|rotan is operated by Renee Kemp-Rotan, an internationally regarded urban designer and master planner.

8. Kemp-Rotan graduated from Syracuse University, cum laude, where she was the first African American female to graduate with a Bachelor of Architecture.

9. Kemp-Rotan then attended the Architectural Association in London, before going on to graduate from Columbia University with a Master of Science in Urban/Regional Planning.

10. She has lectured at leading international universities, including the Sorbonne, Cairo University, MIT, and Harvard on issues of design and social impact.

11. She has served ten mayors as the Urban Policy Advisor in major U.S. cities, such as Washington, New York City, Atlanta, and most recently, Birmingham, where she was the Director of Grants and Special Projects, Director of Master Planning for Railroad Reservation Park, and Founding Director and Designing for the Birmingham Civil Rights Heritage Trail.

12. Renee's works are included in the African American National Biography, edited by Dr. Henry Louis Gates, Harvard University, WEB DuBose Center and Oxford University, and the African American Research Center.

13. Kemp-Rotan has directed the American Institute of Architects (AIA) Design, Education, Practice Division and the National Endowment for the Arts' Design Demonstration and National Design Competition Programs.

### Africatown International Design Competition

14. The Clotilda was the was the last known slave ship to bring captives from Africa to the United States. The ship illegally brought enslaved individuals from Africa into Alabama around 1860, where the ship was scuttled and burned to hide evidence of illegal slave trading.

15. After the Civil War, several former slaves moved back to the area and founded Africatown.

16. The wreckage of the Clotilda was rediscovered in 2018. It was then added to the National Register of Historic Places in 2021.

17. In the summer of 2018, M.O.V.E invited studio|rotan to Africatown and asked studio|rotan to be involved in a project that would bring many community-

based, non-coordinated projects into a comprehensive plan, design and development directive for Africatown.

18. Seeking to capitalize on this discovery, M.O.V.E. accepted studio|rotan's carefully outlined strategy and scope of work and studiorotan's ability and capacity to develop and deliver such a complex and well-organized multi-site, global design challenge to the professional world of architecture.

19. studio|rotan and M.O.V.E. entered into a Contract for Services Agreement ("Agreement") in which Studiorotan LLC would provide its skills as a Professional Competition Advisor in exchange for $100,000.

20. The competition was to be called the Africatown International Design Competition (the "Competition"). The competition sought submissions for a multi-site design challenge for professional architects to submit design boards and essays centering around the 2019 Clotilda Discovery and furthering preservation and revitalization of the Africatown community.

21. The Competition was a series of design programs for four sites and sixteen venues throughout Africatown. These design programs resulted in the largest Africa-centric, multi-site, centric design competition the world had ever seen.

22. The Competition's website garnered 22,000 hits from architects and designers from around the world.

23. Rotan, through studio|rotan, was the primary Professional Competition Advisor for this matter.

24. Vickii Howell ("Howell") was the Competition Coordinator for M.O.V.E. and the primary point of contact between studio|rotan and M.O.V.E.

25. The Agreement included a list of services provided as a Professional Competition Advisor.

26. The Agreement had a Non-Circumvention provision that provided, "It is understood that by signing this Agreement, both parties agree to make no attempt to enter into any negotiations, contractual obligations or communications with any vendor, client or business contact of the other party that is defined by this Agreement as Confidential and subject to this Agreement, without the express written consent of the other party. If it appears that either party has entered into a relationship with a vendor, client or business contact of the other party in violation of this Agreement, the violating party acknowledges and agrees that the other party shall be entitled to an injunction to restrain the other party from continuing said relationship and also recover any and all damages or losses either direct or indirect

as a result of any such relationship. The harmed party shall not be prohibited by this provision from pursuing other remedies including but not limited to claims for losses and/or damages."

27. In furtherance of the Agreement, studio|rotan conducted the competition, which included programming four sites and 16 venues, creating design program challenges, and securing sponsorships and funding from national organizations such as the American Institute of Architects (AIA), National Organization of Minority Architects (NOMA), and Visit Mobile.

28. studio|rotan successfully completed its scope of work and raised approximately $44,300 in fees, which were paid as partial compensation for its services.

29. On June 15th, 2023, the Competition Awards Assembly was held, but studio|rotan had not been paid in full for the work despite planning, directing, and hosting the assembly.

30. Additionally, M.O.V.E. failed to pay other individuals and organizations associated with the Competition, including $17,000 promised to jurors and a $2,500 honorarium to keynote speaker, who studio|rotan had helped to coordinate and retain.

## M.O.V.E.'S MISAPPROPRIATION

31. In furtherance of the Agreement, studio|rotan created a significant amount original intellectual property, including design challenges, framework documents, and animations used for the Competition.

32. Despite the initial collaboration, M.O.V.E., at Howell's direction, began misappropriating the work done by studio|rotan.

33. Howell began misrepresented the ownership of this intellectual property, claiming that the Competition results and Studio|rotan's work belong to M.O.V.E., exclusively.

34. Howell also began disseminating intellectual property created by studio|rotan in order to solicit funding for M.O.V.E., claiming that M.O.V.E. had rights to use that intellectual property to the exclusion of studio|rotan.

35. Howell was successful in obtaining third party funding, which Howell directed to M.O.V.E., to the exclusion of studio|rotan, in violation of the Agreement.

36. studio|rotan successfully secured a $25,000 National Endowment for the Arts (NEA) grant for the Competition, requiring a matching contribution from M.O.V.E.

37. M.O.V.E. has failed to notify studio|rotan of the grant award or implement necessary grant protocols or take steps to fulfill its grant obligations to studio|rotan, while using studio|rotan's contacts, design programs, works and deliverables and by leaving the grant and Rotan's reputation in limbo, with the National Endowment for the Arts.

38. M.O.V.E. has failed to admonish Howell for claiming false ownership of its intellectual property and harming studio|rotan's reputation.

39. M.O.V.E. used studio|rotan's intellectual property in order to pitch a $150,000 grant from the Mellon Foundation.

40. M.O.V.E. still owes studio|rotan $55,700 for services rendered, an amount that M.O.V.E. does not dispute but has failed to pay or address through a payment plan.

41. studio|rotan has sent numerous requests to with the M.O.V.E. board on issues of payment. M.O.V.E. has not responded to any of those letters from studio|rotan or its counsel.

42. On top of using intellectual property created by studio|rotan without paying for it, Howell and M.O.V.E. directly benefitted from the use of such intellectual

property in its fundraising efforts, raising tens of thousands of dollars off of studio|rotan's work.

## HOWELL'S VENDETTA

After the completion of the Competition, Howell began interfering with the professional relationships of studio|rotan and intentionally sabotaging Rotan specifically.

43. Howell interfered with studio|rotan's contractual relationship with Consult Econ by sabotaging a $130,000 contract for a regional tourism and economic development study. This interference stemmed from Howell's dissatisfaction with her exclusion from the project, despite lacking relevant qualifications.

44. Howell also undermined studio|rotan's role as a spokesperson for the World Monuments Fund (WMF), violating established reporting protocols and providing false information to WMF representatives at the event in an effort to discredit Rotan and studio|rotan. Some of these false communications occurred immediately before Rotan was set to present on a panel at the University of Pennsylvania, which were intended to disrupt the panel presentation.

45. Further Howell disseminated false and defamatory statements about Rotan and studio|rotan to Africatown descendants and international stakeholders,

including representatives of the World Monuments Fund. These statements were intended to damage Rotan's reputation and credibility, resulting in harm to Rotan's professional relationships.

46. Howell also edited one of studio|rotan's animations, which was subsequently shown publicly at a Netflix event without Plaintiff's consent. This unauthorized editing substantially changed the nature of the animation, to studio|rotan's detriment.

47. Howell, in her individual capacity, misappropriated Competition registration fees and grant funds, using approximately $11,800 for personal use without apparent Board approval.

48. Despite receiving funding designated for advertising the Competition, Howell failed to fulfill the intended purpose, instead using the funds for unrelated travel.

49. M.O.V.E. has failed to hold formal Board meetings, maintain proper minutes, and ensure compliance with quorum requirements, during this matter, raising serious concerns about the legitimacy of its operations as a 501(c)(3) organization.

50. Howell's use of M.O.V.E. assets to further a personal agenda are sufficient to pierce M.O.V.E.'s corporate veil.

## CLAIMS

### Count I
### Breach of Contract

51. Plaintiff incorporates by reference in the Parties, Jurisdiction and Venue, and Relevant Facts sections as if fully set forth herein.

52. M.O.V.E. and studio|rotan entered into a valid and enforceable Agreement in which studio|rotan would act as Professional Competition Advisor in exchange for $100,000.

53. studio|rotan has fully performed of its all obligations under Agreement using its expertise, skills, professionalism, and connections in the field of architecture of create, organize, implement and manage the Competition.

54. M.O.V.E. breached the Agreement by only paying studio|rotan $44,300 despite studio|rotan completing the work outlined in its entirety.

55. M.O.V.E. also breached the Intellectual Property and the Non-Circumvention provisions of the Agreement by taking ownership of studio|rotan's

intellectual property which both parties agreed would belong to studio|rotan, and then using that intellectual property to the exclusive benefit of M.O.V.E.

56.     As a direct and proximate result of M.O.V.E.'s breach, studio|rotan has suffered damages of at least $55,700 and additional damages by the breach of the Agreement.

## Count II
## Copyright Infringement

57.     Plaintiff incorporates by reference in the Parties, Jurisdiction and Venue, and Relevant Facts sections as if fully set forth herein.

Renee Kemp Rotan is the owner of the following valid copyrights

58.     "The Africatown International Design Idea Competition Why A Competition and 7 Other Unpublished Works." with Registration Number: PAu004210458.

59.     "Africatown Design Competition Poster 1" with Registration Number: VAu001521715.

60.     "Africatown Design Competition Poster 2" with Registration Number: VAu001521718.

61. Rotan has granted a license to studio|rotan for the use of those copyrights.

62. M.O.V.E., by and through Howell, who had contributed to M.O.V.E.'s infringement, without authorization, copied, reproduced, distributed, or otherwise exploited Plaintiff's copyrighted works in violation of 17 U.S.C. § 501.

63. M.O.V.E.'s and Howell's actions were willful and intentional, entitling studio|rotan to enhanced damages.

64. studio|rotan has suffered damages, including but not limited to lost profits and harm to goodwill, and seeks statutory damages or actual damages, as permitted by law.

## Count III
## Unjust Enrichment

65. Plaintiff incorporates by reference in the Parties, Jurisdiction and Venue, and Relevant Facts sections as if fully set forth herein.

M.O.V.E .has unjustly retained benefits conferred by studio|rotan , including studio|rotan's professional connections, copyrighted material, and the remaining $55,700 owed for studio|rotan's services under circumstances that render M.O.V.E.'s retention of such benefits inequitable.

66. M.O.V.E.'s retention of these benefits was without compensation to studio|rotan, despite M.O.V.E.'s knowledge of the benefits and their improper acquisition.

67. M.O.V.E. further used these benefits to tarnish studio|rotan's reputation as a professional in the field spreading false rumors to damage studio|rotan's hard-earned goodwill.

68. As a result, studio|rotan is entitled to restitution in an amount to be determined at trial.

## Count IV
## Tortious Interference with Business Relationships

69. Plaintiff incorporates by reference in the Parties, Jurisdiction and Venue, and Relevant Facts sections as if fully set forth herein.

studio|rotan had valid and existing business relationships or reasonable expectations of entering into business relationships with the American Institute of Architects, the National Organization of Minority Architects, Visit Mobile, and the World Monuments Fund among other groups and individuals.

70. Howell intentionally and improperly interfered with these relationships by making false statements about the work done by studio|rotan and hurting studio|rotan's reputation.

71. Howell's interference was wrongful, unjustified, and caused harm to studio|rotan's business relationships.

72. As a result of Defendants' conduct, studio|rotan has suffered damages, including lost profits and business opportunities.

## Count V
## Defamation

73. Plaintiff incorporates by reference in the Parties, Jurisdiction and Venue, and Relevant Facts sections as if fully set forth herein.

Howell, individually and in her capacity within M.O.V.E., published false and defamatory statements concerning studio|rotan to third parties.

74. The statements were unprivileged, made with actual malice or negligence, and were intended to and did in fact damage studio|rotan's reputation.

75. As a direct and proximate result of Defendants' defamatory statements, studio|rotan has suffered harm, including injury to reputation, emotional distress, and economic losses.

76. studio|rotan is entitled to compensatory and punitive damages in an amount to be determined at trial.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff studio|rotan respectfully requests that this Court enter judgment in its favor and against Defendants M.O.V.E. and Vickii Howell, jointly and severally, granting the following relief:

1) Compensatory Damages - Awarding Plaintiff damages in an amount to be determined at trial, including but not limited to:

    a) Damages resulting from M.O.V.E.'s breach of contract in the amount of $55,700;

    b) Damages for the Defendants' unauthorized use of Plaintiff's copyrighted materials;

    c) Damages for the unjust enrichment of Defendants at Plaintiff's expense;

    d) Damages caused by Defendants' tortious interference with Plaintiff's business relationships; and

    e) Damages resulting from Defendants' defamatory statements.

2) Statutory and/or Enhanced Damages - Awarding statutory and/or enhanced damages for copyright Infringement as provided under 17 U.S.C. § 504 or other applicable law.

3) Enjoining Defendants from:

   a) Further infringing Plaintiff's copyrights;

   b) Disseminating false or defamatory statements about Plaintiff; and

   c) Interfering with Plaintiff's business relationships.

4) Costs and Fees - Awarding Plaintiff all costs and attorneys' fees incurred in this action as provided by law or equity.

5) Punitive Damages - Awarding punitive damages to deter Defendants and others from engaging in similar wrongful conduct in the future.

6) Pre- and Post-Judgment Interest - Awarding pre-judgment and post-judgment interest at the maximum legal rate.

7) Other Relief - Granting such other and further relief as the Court deems just and proper.

**Jury Trial Requested**

Respectfully submitted,
***/s/ Joseph E. "Tripp" Watson, III***
Joseph E. "Tripp" Watson, III

***/s/ Madison J. Thomas***
Madison J. Thomas

Attorneys for Studiorotan, LLC
Intellectual Property Consulting
2007 3rd avenue N
Birmingham, AL 35203
205.545.7278
twatson@iplawconsulting.com
mthomas@iplawconsulting.com