FILED
2025 May-19  PM 03:34
U.S. DISTRICT COURT
N.D. OF ALABAMA

In the United States District Court
for the Northern District of Alabama,
Southern Division

| | |
|---|---|
| **Studiorotan LLC,**<br>   *Plaintiff,*<br><br>        v.<br><br>**Vickii J. Howell and**<br>**M.O.V.E. Gulf Coast CDC,**<br>   *Defendants.* | 2:25-cv-00020-GMB<br><br>Opposed<br><br>No Oral Argument Requested |

## PLAINTIFF'S BRIEF IN SUPPORT OF ITS MOTION FOR PRELIMINARY INJUNCTION

Plaintiff Studiorotan LLC ("Plaintiff" or "studio|rotan"), by and through undersigned counsel, submits this Brief in Support of its Motion for Preliminary Injunction against Defendants Vickii J. Howell ("Howell") and M.O.V.E. Gulf Coast CDC ("M.O.V.E.") (collectively "Defendants") and respectfully requests that this Court issue an order restraining Defendants as set forth below.

# TABLE OF CONTENTS

Table of Contents ................................................................................ 2

Introduction ........................................................................................ 3

Standard .............................................................................................. 4

Material Facts ..................................................................................... 5

Argument ............................................................................................ 9

    1.    Plaintiff is likely to succeed on the merits. ................................... 9

        *1.1.*    *Copyright Infringement* ................................................. *10*

        *1.2.*    *Misrepresentation / Passing Off* ..................................... *11*

        *1.3.*    *Defamation* ....................................................................... *11*

    2.    Plaintiff faces irreparable harm without injunctive relief and it has no adequate remedy of law. ........................................................... 12

    3.    The balance of equities favors Plaintiff. ...................................... 14

    4.    The public interest supports issuance of an injunction. ................ 15

Prayer for Relief ............................................................................... 17

Certificate of Service ........................................................................ 21

# INTRODUCTION

This action arises from Defendants' repeated and continuing misuse of Studio|rotan's intellectual property, including copyrighted designs, registered trademarks, frameworks, and animations in violation of federal copyright law. Defendants have also misrepresented themselves as the rightful owner or author of the same works, improperly capitalized on that misrepresentation to secure grants and sponsorships and published false or defamatory statements about Studio|rotan and Ms. Renee Kemp-Rotan, causing ongoing reputational and financial harm to both Rotan and her business. Plaintiff has shown by affidavit that it has suffered irreparable harm and will continue to do so absent immediate injunctive relief.

## STANDARD

A preliminary injunction is an extraordinary remedy that may issue only if the movant clearly establishes:

1. Substantial likelihood of success on the merits;

2. Substantial threat of irreparable injury if the injunction does not issue;

3. That the threatened injury to the movant outweighs whatever damage the proposed injunction may cause the opposing party; and

4. That the injunction would not be adverse to the public interest.

*See, e.g., McDonald's Corp. v. Robertson*, 147 F.3d 1301, 1306 (11th Cir. 1998); *Siegel v. LePore*, 234 F.3d 1163, 1176 (11th Cir. 2000) (en banc). As shown below, all four factors support granting the requested injunctive relief.

## MATERIAL FACTS

1. Studio|rotan and Move CDC entered into a Services Agreement ("Agreement") in which Studio|rotan would provide its skills as a Professional Competition Advisor in exchange for $100,000 and Studio|rotan would keep all the rights of the intellectual property it created for the competition.

2. Studio|rotan created original intellectual property, including design challenges, framework documents, and animations used for the Africatown International Design Idea Competition (the "Competition").

3. From the work that was created to further the Competition, Studio|rotan's owner, Renee Kemp Rotan ("Rotan"), registered the following valid copyrights:

   a.  "The Africatown International Design Idea Competition Why A Competition and 7 Other Unpublished Works." with Registration Number: PAu004210458.

   b. "Africatown Design Competition Poster 1" with Registration Number: VAu001521715.

   c. "Africatown Design Competition Poster 2" with Registration Number: VAu001521718.

4. Studio|rotan is also the owner of a valid trademark to THE AFRICATOWN INTERNATIONAL DESIGN IDEA COMPETITION, Registration Number 98286050.

5. Despite the significant amount of work that Studio|rotan performed in furtherance of the Competition, Move CDC has refused to pay Studio|rotan the full amount set forth in their Agreement.

6. Further, having refused to pay Studio|rotan, Move CDC has blatantly capitalized on the work that Studio|rotan created, using such material to raise money from third parties for Move CDC's operations.

7. Move CDC's employee and President, Vickii Howell ("Howell"), has misrepresented ownership of this intellectual property, claiming that the Competition results and Studio|rotan's work belong to Move CDC for the development of the competition.

8. Additionally, Move CDC failed to pay other individuals and organizations associated with the Competition, which Studio|rotan used influence and relationships in the community to secure, including $17,000 promised to jurors and a $2,500 honorarium to keynote speaker.

9.  After the completion of the Competition, Howell began interfering with the professional relationships of Studio|rotan and intentionally sabotaging Rotan specifically.

10. Howell interfered with Studio|rotan's contractual relationship with Consult Econ by sabotaging a $130,000 potential contract for a regional tourism and economic development study. This interference stemmed from Howell's dissatisfaction with her exclusion from that project, despite lacking relevant qualifications.

11. Howell also undermined Studio|rotan's role as a spokesperson for the World Monuments Fund (WMF), violating established reporting protocols and providing false information to WMF representatives.

12. Further Howell disseminated false and defamatory statements about Rotan to Africatown descendants and international stakeholders, including representatives of the World Monuments Fund. These statements were intended to damage Rotan's reputation and credibility, resulting in harm to Rotan's professional relationships.

13. Howell altered one of Studio|rotan's animations without authorization, which was subsequently shown publicly at a Netflix event without Studio|rotan's consent.

14. Howell misappropriated Competition registration fees and grant funds, using approximately $11,800 for personal use without apparent Board approval. Despite receiving funding designated for advertising the

Competition, Howell failed to fulfill the intended purpose, instead using the funds for unrelated travel.

15. Studio|rotan successfully secured a $25,000 National Endowment for the Arts (NEA) grant for the Competition, requiring a matching contribution from Move CDC. Move CDC has failed to notify Studiorotan of the grant award or implement necessary grant protocols or take steps to fulfill its grant obligations to Studio|rotan, while using Studio|rotan's contacts, design programs, works and deliverables and by leaving the grant and Rotan's reputation in limbo, with the National Endowment for the Arts.

16. Move CDC has failed to admonish Howell for claiming false ownership of its intellectual property and harming Studio|rotan's reputation.

17. Move CDC used Studio|rotan's content to pitch a $150,000 grant from the Mellon Foundation.

18. Move CDC continued using the copyrights listed above without permission from Studio|rotan and still do so to this day.

## ARGUMENT

To obtain a preliminary injunction, the moving party must demonstrate: (1) a likelihood of success on the merits, (2) that they will suffer irreparable harm in the absence of an injunction, (3) that the balance of equities tips in their favor, and (4) that an injunction is in the public interest. *Davidoff & CIE, S.A. v. PLD International Corp.*, 263 F.3d 1297, 1300 (11th Cir. 2001). Each of these factors is satisfied here, and the Court should grant Plaintiff's motion.

**1.  Plaintiff is likely to succeed on the merits.**

Plaintiff is required to have a reasonable chance of winning the case based on the merits to achieve a preliminary injunction. In balancing the four factors for a preliminary injunction, "while the likelihood of success is generally the most important," a court may employ a "sliding scale" by "balancing the hardships associated with the issuance or denial of a preliminary injunction with the degree of likelihood of success on the merits." *Cent. Ala. Fair Hous. Ctr. v. Magee*, No. 2:11-cv-982, 2011 WL 5878363, at *1 (M.D. Ala. Nov. 23, 2011). "Thus, the greater the potential harm, the lower the likelihood of success needs to be." *Id.*

Here, Plaintiff not only shown a likelihood for success on the merits, but Vickii Howell has admitted to misappropriating Plaintiff's works. Howell explains

in her Answer that not only have the Defendants used Plaintiff's registered works, but they both continue to use those works to fundraise from third parties.

1. Defendants admit that they made changes to animations made by Plaintiff because they were "the paying customer." (Ans., Doc. 3, p. 4).

2. Defendants admit that they raised $200,000 specifically to pay to Plaintiffs, but then inexplicably never paid Plaintiff. (Ans., Doc. 3, p. 4).

3. Defendants admit that they continue to use Plaintiff's designs specifically in their fundraising efforts. (Ans., Doc. 3, p. 4-5).

Plaintiff's potential harm includes further misuse of Plaintiff's copyrights, further dismantlement of reputation, and loss of income as a result. Therefore, the potential harm is great, and the likelihood of success meets the standard of reasonable likelihood. Plaintiff has presented substantial evidence demonstrating that Defendant has violated its intellectual property rights.

*1.1.  Copyright Infringement*

To establish copyright infringement, a plaintiff must show (1) ownership of a valid copyright, and (2) unauthorized copying of original elements of the work.

*Feist Publ'ns, Inc. v. Rural Tel. Serv. Co.*, 499 U.S. 340, 361 (1991). Studio|rotan

owns valid, registered copyrights in its designs and animations. (Aff. ¶ 2.) The

unauthorized "copying" includes Defendants' use, reproduction, and alteration of

these works beyond the scope of any license or contract. (Aff. ¶ 11(f).) Because

Studio|rotan has plainly alleged and supported both ownership and infringement, it

shows a substantial likelihood of success on its infringement claims.


### 1.2. Misrepresentation / Passing Off

Defendants' falsely crediting themselves for Plaintiff's designs further

supports a likely showing of liability. Courts within this Circuit routinely enjoin

parties that misrepresent the source, sponsorship, or affiliation of creative works.

*cf. North Am. Med. Corp. v. Axiom Worldwide, Inc.*, 522 F.3d 1211, 1218 (11th Cir.

2008) (applying a similar analysis in trademark contexts). Here, Defendants used

Plaintiff's copyrighted materials to solicit grants and investor interest, thereby

causing confusion and diverting opportunities away from Studio|rotan. (Aff. ¶ 9

and 13.)


### 1.3. Defamation

Defendants also made statements that falsely impugned Ms. Rotan's

professional competence, causing reputational harm and lost business

opportunities. (Aff. ¶ 11.) Under Alabama law, to succeed on a defamation claim, a plaintiff must prove (1) a false statement of fact, (2) unprivileged publication to a third party, (3) fault amounting at least to negligence, and (4) either actionability irrespective of special harm or the existence of special harm. *Gertz v. Robert Welch, Inc.*, 418 U.S. 323, 340 (1974). Plaintiff's affidavit details these false, damaging statements made to third parties at NEA and WMF. (Aff. ¶ 13.)

Because Studio|rotan can demonstrate a "substantial likelihood of success" across its claims, this factor weighs heavily in favor of granting an injunction.

## 2. Plaintiff faces irreparable harm without injunctive relief, and it has no adequate remedy of law.

Studio|rotan will suffer immediate and irreparable harm absent a preliminary injunction. Courts have consistently held that irreparable harm exists where the moving party demonstrates harm that is not compensable by money damages alone and therefore a preliminary injunction is necessary.

Irreparable harm must include more than monetary harm. *Suntrust Bank v. Houghton Mifflin Co.*, 268 F.3d 1257, 1276 (11th Cir. 2001). While Plaintiff has suffered monetary loss through breach of a services contract, it has also suffered irreparable harm in the form of loss of goodwill, professional relationships,

intellectual property rights, and reputational damage through the actions of
Defendant's employee Howell. Further, Howell and Move CDC will continue to
use Plaintiff's registered copyrights as its own unless an injunction is granted.
While a copyright infringement alone does not presume irreparable injury, it must
be based on the particular circumstances of the case. *Campbell v. Bennett*, 47 F.4th
1362, 1368 (11th Cir. 2022). In this case there is monetary loss, copyright
infringement, and untold damage to reputation and goodwill. Such harm is
inherently difficult to quantify, and monetary damages would be insufficient to
make Plaintiff whole.

The Eleventh Circuit recognizes that the loss of control over one's
intellectual property and reputation constitutes irreparable harm. *Ferrellgas
Partners, L.P. v. Barrow*, 143 F. App'x 180, 190–91 (11th Cir. 2005). Studio|rotan
has already lost business opportunities and faced reputational harm due to
Defendants' actions. Defendants disparaged Ms. Rotan to potential sponsors,
including WMF, undermining Plaintiff's credibility and goodwill. (Aff. ¶ 11.)

These injuries are actual and ongoing. No monetary award can retroactively
restore those business opportunities or fully repair the damage to Plaintiff's
reputation. Courts routinely hold that such intangibles are presumptively
irreparable, particularly in intellectual property disputes, because repeated misuse

of copyrighted works and defamation can continue indefinitely if not enjoined. *See Siegel*, 234 F.3d at 1176.

### 3. The balance of equities favors Plaintiff.

A trial court "will balance the probable resulting damages to the respective parties" when considering whether to issue a preliminary injunction. *Alabama Dep't of Transp. v. Blue Ridge Sand & Gravel, Inc.,* 718 So. 2d 27, 32 (Ala. 1998).

The balance of equities tilts heavily in Plaintiff's favor. Absent an injunction, Plaintiff will continue to suffer irreparable harm as outlined above, while Defendant's potential harm is minimal. Defendant will merely be required to comply with their pre-existing legal obligations which is had originally agreed to in the original Agreement and refrain from unlawful conduct.

The relative hardships strongly favor Plaintiff. If no injunction is issued, Plaintiff's livelihood, reputation, and exclusive rights will continue to be violated. By contrast, Defendants have no legitimate interest in continuing to use Plaintiff's works without authorization or making false and injurious statements. *See United States v. Lambert*, 695 F.2d 536, 540 (11th Cir. 1983) (a defendant cannot complain of being prohibited from engaging in unlawful acts).

Thus, the injunction only forbids Defendants from doing what the law already prohibits—unlawfully infringing intellectual property and defaming Plaintiff. There is no cognizable hardship to Defendants in being required to cease wrongful conduct. In fact, without court intervention, Defendants are free to continue harming Plaintiff's carefully developed professional reputation and goodwill.

## 4. The public interest supports issuance of an injunction.

Granting the requested injunction advances the public interest by protecting intellectual property rights and enforcing contractual obligations. Moreover, denying injunctive relief would undermine public confidence in enforcement of intellectual property. The courts have repeatedly concluded that "public interest lies with protecting the rights of copyright owners" *CBS Broadcasting, Inc. v. Echostar Communications Corp.*, 265 F.3d 1193, 1198 (11th Cir. 2001).

Plaintiff has demonstrated a likelihood of success on the merits, irreparable harm, a favorable balance of equities, and that the public interest supports injunctive relief. Accordingly, Plaintiff respectfully requests that the Court grant this motion for a preliminary injunction to prevent ongoing and imminent harm.

Enjoining intellectual property infringement and defamation upholds the strong public interest in promoting creative work, preventing consumer confusion, and ensuring respect for the rights of content creators. *Feist*, 499 U.S. at 349–50; *McDonald's Corp.*, 147 F.3d at 1307 (recognizing the public interest in preventing deceptive practices). Copyright protections are enshrined in the Constitution to "promote the Progress of Science and useful Arts," and stopping ongoing infringement furthers that goal. U.S. Const. Art. I, § 8, cl. 8.

Preventing further defamatory statements also benefits the public by promoting truthful communications. *Gertz*, 418 U.S. at 340 (false statements of fact have no constitutional value). Thus, the requested injunction aligns with the broader public interest in safeguarding intellectual property and ensuring an honest marketplace of ideas.

# PRAYER FOR RELIEF

For these reasons, Studio|rotan respectfully requests that the Court immediately enter an Order awarding the following relief:

1. **Copyright Infringement**

   a. Defendants, their officers, agents, servants, employees, attorneys, and all persons acting in concert with them who receive actual notice of this Order are enjoined from directly or indirectly infringing any copyrighted work owned or controlled by Plaintiff, including the works identified in Registrations PAu004210458, VAu001521715, and VAu001521718. This prohibition includes copying, reproducing, downloading, distributing, uploading, transmitting, displaying, selling, advertising, or otherwise exploiting those works without Plaintiff's express authorization.

2. **Trademark Infringement and Unfair Competition**

   a. Regarding the mark THE AFRICATOWN INTERNATIONAL DESIGN IDEA COMPETITION, Registration Number 98286050, Defendants and those in active concert with them are enjoined from:

      i. using Plaintiff's registered mark, or any confusingly similar designation, in connection with the manufacture, distribution,

advertising, promotion, offer for sale, or sale of any goods or

services;

ii.  representing that any product or service offered by Defendants

is sponsored by, affiliated with, or otherwise associated with

Plaintiff; and

iii.  registering, trafficking in, or using any domain name, social-

media account, or online handle incorporating Plaintiff's mark,

or assisting others in any of the foregoing acts.

3. **Defamation**

a.  Defendants are enjoined from repeating, publishing, or causing to be

published any untruthful, inflammatory, defamatory, or false-light

statements about Studio|rotan or Renee Kemp-Rotan, or statements

that are materially indistinguishable in substance and meaning, in any

medium. Nothing in this Order restrains Defendants from publishing

truthful statements, expressing opinions that do not contain provably

false factual assertions, or testifying under oath in any judicial or

administrative proceeding.

4. **Ancillary Relief**

a.  Any financial institution, payment processor, or online platform

served with this Order shall immediately restrain any account owned

or controlled by Defendants that receives proceeds from the infringing acts, to be interplead into Court pending further adjudication.

b.  Within seven (7) days of service, Defendants shall deliver to Plaintiff's counsel for impoundment all products, labels, advertisements, digital files, and other materials bearing Plaintiff's copyrighted works or trademarks, pursuant to 17 U.S.C. § 503 and 15 U.S.C. § 1118.

c.  Defendants shall preserve all paper and electronic records relating to the acts complained of and provide expedited discovery, limited to identification of infringing goods, suppliers, customer lists, and financial accounts, within fourteen (14) days of service.

d.  Within thirty (30) days of entry of this Order, Defendants shall file a sworn report detailing their compliance with each provision herein.

5. **Bond**

a.  Studio|rotan further requests that the Court waive or set a minimal bond under Fed. R. Civ. P. 65(c) and award such other and further relief as the Court deems just and proper.

Respectfully submitted,
*/s/ Joseph E. "Tripp" Watson, III*
Joseph E. "Tripp" Watson, III

*/s/ Madison J. Thomas*
Madison J. Thomas

Attorneys for Studiorotan, LLC
Intellectual Property Consulting
2007 3rd Avenue N
Birmingham, AL 35203
205.545.7278
twatson@iplawconsulting.com
mthomas@iplawconsulting.com

# CERTIFICATE OF SERVICE

I hereby certify that on Monday, May 19, 2025, I filed the foregoing with the Clerk of the Court using the CM/ECF system, which will send notification to all counsel of record:

Douglas L. Bridges
*Attorney for Vickii J. Howell and M.O.V.E. Gulf Coast CDC*
453 Dauphin Street
Mobile, Alabama 36602
Phone: (251) 289-9787
doug@adamsiplaw.com

*/s/ Joseph E. "Tripp" Watson, III*