In the United States District Court
for the Northern District of Alabama,
Southern Division

| | |
|---|---|
| **Studiorotan LLC,**<br>*Plaintiff,*<br><br>v.<br><br>**Vickii J. Howell and**<br>**M.O.V.E. Gulf Coast CDC,**<br>*Defendants.* | 2:25-cv-00020-GMB |

# PLAINTIFF'S REPLY BRIEF IN SUPPORT OF ITS MOTION FOR PRELIMINARY INJUNCTION

Plaintiff Studiorotan LLC ("Plaintiff") submits this Reply Brief in support of its Motion for Preliminary Injunction (Doc. 28). For the reasons stated herein, the requested relief is due to be GRANTED.

## INTRODUCTION

Plaintiff seeks to halt Defendants' ongoing, unauthorized use of Plaintiff's creative works and trademarked brand before further harm is done. Defendants have not paid for the extensive design and branding work Plaintiff provided, yet they continue to exploit those works to raise money for their own benefit. Plaintiff's goal in this motion is straightforward: to stop Defendants from using

Plaintiff's copyrighted materials and registered trademark unless and until they are authorized to do so (which, to date, they are not).

# ARGUMENT

**1. Defendants Offer No Substantive Evidence to Rebut Plaintiff's Sworn Allegations**

Defendants' response fails to present any substantive evidence contradicting the detailed facts set forth in Plaintiff's motion and supporting affidavit. Plaintiff's sworn factual allegations stand unchallenged.

Renee Kemp-Rotan meticulously documented the creation of the copyrighted works, Plaintiff's ownership of the relevant intellectual property, Defendants' failure to pay for the work, and Defendants' ongoing use of those works to solicit funding. Defendants have not refuted any of these points with evidence. Instead, Defendants rely solely on their lawyer's arguments and denials in a brief. But unsworn statements and arguments of counsel are not evidence and cannot create a factual dispute.

Moreover, Defendants' own Answer to the Complaint contains admissions that corroborate Plaintiff's claims. Notably, Defendants admit the following key facts:

1. **Use of Plaintiff's Works:** Defendants admit they have used and even made changes to animations created by Plaintiff, justifying it by saying they were "the paying customer" (even though they have not paid).

2. **Funds Raised but Not Paid:** Defendants admit they raised $200,000 specifically intended to pay Plaintiff, yet they never paid Plaintiff.

3. **Ongoing Use in Fundraising:** Defendants admit they "continue to use Plaintiff's designs" in their current fundraising efforts with third parties.

These admissions are devastating to Defendants' position. They amount to an acknowledgment that *Plaintiff created the works, Defendants raised money on the back of those works, failed to pay Plaintiff, and are still using Plaintiff's intellectual property to solicit funds.* The Defendants have made it abundantly clear that they will continue to violate Plaintiff's rights unless and until a court orders them to stop.

**2. Plaintiff Has a Substantial Likelihood of Success on the Merits**

Plaintiff's uncontroverted evidence demonstrates a clear likelihood of success on its claims for copyright infringement, trademark infringement, and related unfair competition. Defendants do not genuinely dispute the two core elements of Plaintiff's IP claims: (1) Plaintiff owns valid intellectual property

rights in the works and mark at issue, and (2) Defendants are using those protected works without authorization.

### 2.1. *Copyright Infringement – Ownership and Copying*

To establish copyright infringement, a plaintiff must show (a) ownership of a valid copyright and (b) unauthorized copying or use of original elements of the work. Here, Plaintiff easily satisfies both prongs.

> "The Copyright Act provides a copyright owner with the exclusive right to copy, distribute, or display his work. *See* 17 U.S.C. § 106. A copyright owner can transfer copyright ownership through the grant of an exclusive license, but the grant must be in writing. *See* 17 U.S.C. §§ 101, 204(a). Alternatively, a copyright owner may allow another to use the copyrighted material without transferring ownership in the material through the grant of a nonexclusive license. With an implied nonexclusive license, 'the copyright owner . . . permits the use of a copyrighted work in a particular manner.' The grant of a nonexclusive license does not require a writing under the Copyright Act, and it may occur orally or may be implied from the copyright owner's conduct.
>
> "Because an implied nonexclusive license can provide an affirmative defense to a claim of copyright infringement, the alleged infringer bears the burden to show that such an implied nonexclusive license exists. An implied license is created when one party (1) creates a work at another's request; (2) delivers the work to that person; and (3) intends that the person copy and distribute the work." Courts examine the totality of the parties' conduct to evaluate intent.
>
> "We have instructed, 'In determining whether an implied license exists, a court should look at objective factors evincing the party's intent, including deposition testimony and whether the copyrighted material was delivered without warning that its further use would constitute copyright infringement.' An implied nonexclusive license

> may be limited in scope, and a defendant commits copyright infringement if he exceeds the scope of the license. So, courts must focus on objective evidence revealing the intent of the parties both to determine whether an implied license exists and, if so, to determine the scope of the license. 'An implied license will be limited to a specific use only if that limitation is expressly conveyed when the work is delivered.'"

*Karlson v. Red Door Homes, LLC*, 611 F. App'x 566, 569-70 (11th Cir. 2015) (cleaned up).

Defendants' primary merits argument appears to be that because no final signed contract exists between the parties, Plaintiff supposedly lacks enforceable rights. This is a fundamental misunderstanding of copyright law. Copyright ownership is not dependent on a signed contract for services; it arises automatically in the author of a work. By law, the creator of an original work is the initial owner of the copyright, unless and until that ownership is transferred *in a signed writing*. *Id*.

Here, Plaintiff created the works at issue, and there has been no signed writing transferring those copyrights to Defendants. Thus, Plaintiff retains full ownership of the copyrights. The absence of a fully executed contract does not immunize Defendants from infringement; on the contrary, it means Defendants never obtained any license or ownership interest that might allow them to use Plaintiff's creations.

## 2.2. *Trademark Infringement – Ownership and Likelihood of Confusion*

Plaintiff is likewise likely to succeed on its trademark claim. Plaintiff is the owner of the mark "THE AFRICATOWN INTERNATIONAL DESIGN IDEA COMPETITION," which has been registered on the Principal Register (U.S. Trademark Reg. No. 98286050). A federal trademark registration is prima facie evidence of the mark's validity and of Plaintiff's exclusive rights to use it in commerce.

## 2.3. *Defendants' Admissions Strengthen Plaintiff's Case*

It bears repeating that Defendants' own admissions remove any doubt about the merits. They admit they raised substantial funds ($200,000 or more) explicitly allocated for Plaintiff's services which they withheld. They admit they continue to display and disseminate Plaintiff's designs in efforts to solicit money. And they admit they altered Plaintiff's work product, treating it as theirs because they wrongly considered themselves "the paying customer." These facts amount to an acknowledgment of unauthorized use and misappropriation. In other words, Defendants are openly doing the things that copyright and trademark law prohibit – copying, modifying, and publicly exploiting Plaintiff's creative works and brand without permission or payment. Given these admissions and the absence of any

cognizable defense, Plaintiff is more than likely to succeed on the merits; it is difficult to imagine a more compelling prima facie case for IP infringement.

### 3. Plaintiff Is Suffering Irreparable Harm and Will Continue to Suffer Irreparably Absent Injunctive Relief

Plaintiff has made a strong showing of irreparable harm, which Defendants largely fail to rebut. The ongoing injury to Plaintiff's business, goodwill, and control over its creative works cannot be compensated by money damages and will intensify if an injunction is denied.

Here, Plaintiff has lost control of how its Africatown competition materials and brand are presented to the world. Defendants are using Plaintiff's works in ways Plaintiff never approved, including altering them and displaying them in contexts Plaintiff did not choose (even at a Netflix-sponsored event without credit to Plaintiff). Defendants' conduct has not only usurped credit for Plaintiff's creative works, but they have also engaged in a pattern of disparagement and unprofessional behavior that reflects poorly on the Africatown project and, by association, on Plaintiff. As detailed in Plaintiff's affidavit, Defendant Vickii Howell (M.O.V.E. Gulf Coast's President) has spread false and defamatory statements about Ms. Rotan to community members and sponsors, undermining Plaintiff's standing in the community.

Third, Defendants' continued misuse of Plaintiff's works is ongoing and threatens to expand, making it impossible to calculate future damages. This is not a one-off injury; it is a continuing harm that multiplies over time.

Further, there is a legitimate concern that Plaintiff would never recover adequate damages from these Defendants. The Defendants have already begged this Court for more time to conduct fundraising to hire an attorney in this matter. If Plaintiff is able to obtain a monetary judgment against Defendants, it may not be worth the very paper on which it is printed. Injunctive relief may be Plaintiff's only viable relief.

In sum, Plaintiff faces imminent and ongoing injuries that cannot be undone absent an injunction. Loss of control over IP, loss of goodwill, and reputational harms are textbook irreparable injuries.

### 4. The Balance of Equities Overwhelmingly Favors Plaintiff

The balancing of harms in this case is decidedly in Plaintiff's favor.

If the injunction is denied, Plaintiff will continue to endure the irreparable harms described: ongoing infringement of its rights, loss of control over its work, erosion of its professional reputation, and lost business opportunities. Every day without an injunction allows Defendants to deepen the damage.

On the other side of the scales, if an injunction is issued, what legitimate harm befalls Defendants? They will be required to cease infringing Plaintiff's copyrights and trademark and to stop making false or misleading statements about Plaintiff or the origin of the works.

The balance of the equities can be summed up succinctly:

- Plaintiff approached this project in good faith and delivered on its promises;
- Defendants did not pay what was due, abused Plaintiff's trust, and then misused Plaintiff's IP for gain.

The equities strongly favor the party that abided by the law (the Plaintiff) over the one that flouted it.

## 5. An Injunction Serves the Public Interest

The final factor, the public interest, also supports issuing a preliminary injunction. The public interest is served by upholding intellectual property rights, enforcing honest business practices, and preventing consumer confusion and deception. Each of those interests would be advanced by the requested injunction.

The Constitution itself reflects the public interest in protecting copyrights ("to promote the Progress of Science and useful Arts" U.S. Const. art. I, § 8, cl. 8).

Enjoining the ongoing infringement of Plaintiff's works vindicates that public interest. It signals that creators' rights will be enforced, which in turn encourages the production of creative works for the benefit of society.

## CONCLUSION

Plaintiff has satisfied all four requirements for a preliminary injunction under Eleventh Circuit standards. Defendants' opposition offers no substantive evidence to the contrary and rests on faulty legal premises. Because Defendants failed to rebut Plaintiff's sworn facts, those facts are deemed admitted for present purposes. And those facts paint a stark picture of ongoing abuse of Plaintiff's creations and name, exactly the sort of situation preliminary injunctive relief is designed to address.

For the foregoing reasons, Plaintiff respectfully requests that the Court grant the preliminary injunction as requested.

Respectfully submitted,
***/s/ Joseph E. "Tripp" Watson, III***
Joseph E. "Tripp" Watson, III
twatson@iplawconsulting.com

***/s/ Madison J. Thomas***
Madison J. Thomas
mthomas@iplawconsulting.com
Attorneys for Studiorotan, LLC

*Of Counsel*
Intellectual Property Consulting
2007 3rd Avenue N
Birmingham, AL 35203
205.545.7278

# CERTIFICATE OF SERVICE

     I hereby certify that on Monday, June 9, 2025, I filed the foregoing with the Clerk of the Court using the CM/ECF system, which will send notification to all counsel of record.

Douglas L. Bridges
Attorney for Vickii J. Howell and M.O.V.E. Gulf Coast CDC
453 Dauphin Street, 2nd Floor
Mobile, Alabama 36602
Phone: (251) 289-9787
doug@adamsiplaw.com

                                    ***/s/ Joseph E. "Tripp" Watson, III***