FILED

2026 May-14  PM 11:14
U.S. DISTRICT COURT
N.D. OF ALABAMA

## IN THE UNITED STATES DISTRICT COURT FOR THE
## NORTHERN DISTRICT OF ALABAMA

STUDIOROTAN LLC                            )
                                           )
    **Plaintiff,**                          )
                                           )
**v.**                                     )
                                           )        **CASE NO. CV-2:25-CV-00020**
VICKII J. HOWELL, and                      )
M.O.V.E. GULF COAST CDC                    )
                                           )
    **Defendants.**

## DEFENDANTS' AMENDED ANSWER, AFFIRMATIVE DEFENSES, AND COUNTERCLAIMS

Defendants Vickii J. Howell ("Howell") and M.O.V.E. Gulf Coast Community Development Corporation ("M.O.V.E." along with Howell as "Defendants") file this Amended Answer, Affirmative Defenses, and Counterclaims to the asserted claims by Plaintiff Studiorotan LLC ("Plaintiff"). Defendants deny all allegations in Plaintiff's claims unless expressly admitted. Any admissions herein are for the purposes of this matter only. Defendants also reserve the right to take further positions and raise additional defenses and counterclaims that may become apparent as a result of additional information discovered subsequent to filing this Answer.

### THE PARTIES

1. Admitted.

2. Admitted.

3. Admitted.

### JURISDICTION AND VENUE

4. Admitted.

5. Admitted.

1

6. Defendants admit that venue is not forbidden in this venue but denies the remainder.

## RELEVANT FACTS

7. Admitted.

8. Admitted.

9. Admitted.

10. Defendants are without knowledge of this fact and thus deny it.

11. Defendants are without knowledge of this fact and thus deny it.

12. Defendants are without knowledge of this fact and thus deny it.

13. Defendants are without knowledge of this fact and thus deny it.

## AFRICATOWN INTERNATIONAL DESIGN COMPETITION

14. Admitted.

15. Admitted,

16. Admitted.

17. Admitted.

18. Defendants admits that the Plaintiff and Defendants collaborated on determining the scope of work for Plaintiff to assist in the Africatown International Design Competition.

19. Denied.

20. Admitted.

21. Admitted.

22. Admitted.

23. Admitted.

24. Admitted.

25. Denied.

26. Denied.

27. Denied.

28. Defendants admit that studio|rotan was paid $44,300 but denies the remainder of the allegation.

29. Defendants admit that the Competition Awards Assembly was held on June 15th, 2023 but denies the remainder.

30. Denied.

## M.O.V.E.'S MISAPPROPRIATION

31. Denied.

32. Denied.

33. Denied.

34. Denied.

35. Denied.

36. Denied.

37. Denied..

38. Denied.

39. Denied.

40. Denied.

41. Admitted.

42. Denied.

## HOWELL'S VENDETTA

43. Denied.

44. Denied.

45. Denied.

46. Denied.

47. Denied.

48. Denied.

49. Denied.

50. Denied..

## COUNT I
## BREACH OF CONTRACT

51. Defendants incorporate by reference each of the preceding paragraphs.

52. Denied.

53. Denied.

54. Denied.

55. Denied.

56. Denied.

## COUNT II
## COPYRIGHT INFRINGEMENT

57. Defendants incorporate by reference each of the proceeding paragraphs

58. Defendants deny that Renee Kemp Rotan is the valid owner of the listed copyrights.

59. Defendants deny that Renee Kemp Rotan is the valid owner of the listed copyrights.

60. Defendants deny that Renee Kemp Rotan is the valid owner of the listed copyrights.

61. Defendants are without knowledge of the asserted facts and thereby deny them.

62. Denied.

63. Denied.

64. Denied.

## COUNT III
## UNJUST ENRICHEMENT

65. Defendants incorporate by reference the proceeding paragraphs and denies the

remainder.

66. Denied.

67. Denied.

68. Denied.

## COUNT IV
## TORTIOUS INTERFERENCE

69. Defendants incorporate by reference the proceeding paragraphs and denies the

remainder.

70. Denied.

71. Denied.

72. Denied.

## COUNT V
## DEFAMATION

73. Defendants incorporate by reference the proceeding paragraphs and denies the

remainder.

74. Denied.

75. Denied.

76. Denied.

## GENERAL DENIAL

Defendants further deny each and every allegation contained in the Plaintiff's Complaint

that TimeTrex has not specifically admitted, denied, or otherwise responded to.

## DEFENDANTS AFFIRMATIVE DEFENSES

Subject to the responses above Defendants allege and assert the following defenses in response to the Complaint, undertaking the burden of proof only as to those defenses deemed affirmative defenses by law, regardless of how such defenses are denominated herein.  In addition to the Affirmative Defenses described below, and subject to the responses above, Defendants specifically reserves all rights to allege additional defenses that become known through the course of discovery or otherwise.

## FIRST AFFIRMATIVE DEFENSE

Plaintiff has failed to state a claim upon which relief may be granted. Each of Plaintiff's five counts is deficient on its face. The breach of contract count fails because no signed agreement between Studiorotan LLC and either Defendant has been pled or attached to the Complaint, and Plaintiff does not allege the existence of mutual assent, definite essential terms, or consideration sufficient to form an enforceable contract. The copyright count fails because Plaintiff does not allege that Studiorotan LLC is the author or owner of the works, does not identify which of the registered works was allegedly copied, and does not plead acts of copying that fall within the scope of any valid registration. The unjust enrichment count is barred to the extent Plaintiff also seeks to enforce a purported contract covering the same subject matter. The tortious interference count fails because Plaintiff has not identified any specific business relationship, any specific act of interference, any knowledge of the relationship by either Defendant, or any resulting damage. The defamation count fails because Plaintiff has not pled with the requisite specificity any false statement of fact, the speaker, the third-party recipient, the time and place of publication, or any cognizable injury to Studiorotan LLC as a corporate entity.

6

## SECOND AFFIRMATIVE DEFENSE

Plaintiff waived any breach of contract claim. Plaintiff was paid the full $44,300 it invoiced for its services as the AIA-style Professional Competition Advisor and accepted that payment without objection. Plaintiff continued to render services and to issue and accept further invoices for years after the alleged breach without ever asserting that any contract had been breached, and without ever demanding execution of the unsigned written services agreement that M.O.V.E. had previously tendered. By accepting the benefits of the parties' working relationship, by continuing performance, and by failing to give timely notice of any alleged breach, Plaintiff has waived any right to assert breach of contract.

## THIRD AFFIRMATIVE DEFENSE

Defendants are licensed to use the asserted intellectual property. To the extent Plaintiff is determined to have any ownership interest in any of the works at issue (which Defendants deny), Defendant M.O.V.E. has at minimum a non-exclusive, royalty-free, irrevocable implied license to use, reproduce, display, distribute, modify, and prepare derivative works from those works in connection with the Africatown International Design Idea Competition and M.O.V.E.'s ongoing community development and grant-related activities.

## FOURTH AFFIRMATIVE DEFENSE

Plaintiff's breach of contract claim fails because no written agreement between Studiorotan LLC and either Defendant was ever executed. In 2022, Defendant M.O.V.E. tendered to Plaintiff a proposed Contract for Services that would have formalized the parties' working relationship.

7

Plaintiff refused to sign that agreement and never returned an executed copy. No counter-offer was extended and accepted on definite terms, no signature page exists, and no integrated writing reflecting mutual assent on all essential terms — including scope of work, ownership of work product, license rights, term, termination, and intellectual property assignment — was ever signed by both parties.

Because no contract was executed, there can be no breach. To the extent Plaintiff seeks to enforce purported oral promises or a hypothetical implied-in-fact contract, those theories fail for lack of definite and certain terms, lack of mutual assent, lack of consideration distinct from the parties' separately documented course of dealing, and to the extent applicable, the Statute of Frauds.

**FIFTH AFFIRMATIVE DEFENSE**

Even if Plaintiff is found to own any of the asserted works (which Defendants deny), M.O.V.E. holds an implied non-exclusive license to use those works. Plaintiff was retained by M.O.V.E. as the Professional Competition Advisor for the Africatown International Design Idea Competition. Plaintiff created the competition materials at M.O.V.E.'s request, with M.O.V.E.'s input, for M.O.V.E.'s competition, and delivered them to M.O.V.E. for the express purpose of running and promoting that competition and the related community development efforts. Plaintiff invoiced M.O.V.E. for the work and accepted payment in full, including the $44,300 it billed.

Under controlling Eleventh Circuit authority, an implied non-exclusive copyright license arises where (1) a person requests the creation of a work, (2) the creator makes and delivers the work to

the person who requested it, and (3) the creator intends that the requesting party copy and distribute the work. All three elements are satisfied here. M.O.V.E. requested the works, Plaintiff created and delivered them, and Plaintiff knew the works would be reproduced, displayed, and distributed by M.O.V.E. on competition websites, in printed materials, in grant submissions, in presentations to stakeholders, and in subsequent community-development programming. The implied license extends to all such uses, including modifications and derivative works reasonably incident to operating the competition and the programs that grew out of it. Plaintiff's acceptance of payment for those uses bars Plaintiff from now recharacterizing those same uses as infringement.

## SIXTH AFFIRMATIVE DEFENSE

Plaintiff's copyright claims are barred because the works at issue are joint works to which M.O.V.E., through its principals and contributors, made independently copyrightable contributions with the intent that those contributions be merged into a unitary whole. The competition concept, name, structure, juror criteria, programmatic narrative, and subject-matter content concerning Africatown were developed jointly. As a co-owner, M.O.V.E. is entitled to use and authorize use of the works without infringing, subject only to a duty to account for profits — a duty that has no application to M.O.V.E.'s non-commercial community development uses.

## SEVENTH AFFIRMATIVE DEFENSE

Plaintiff Studiorotan LLC and its sole member Renee Kemp-Rotan are legally distinct persons. Studiorotan LLC may sue only on claims that belong to the LLC; it cannot prosecute claims that

9

belong personally to Ms. Kemp-Rotan. Several of the wrongs alleged in the Complaint, including the alleged statement that Ms. Kemp-Rotan personally assaulted Ms. Howell at a M.O.V.E. board meeting and the alleged statements about Ms. Kemp-Rotan's personal conduct made to third parties, concern Ms. Kemp-Rotan as an individual. Any cause of action arising out of those personal allegations belongs to Ms. Kemp-Rotan personally and not to Studiorotan LLC. Studiorotan LLC therefore lacks standing and is not the real party in interest as to any such claim.

Likewise, to the extent Plaintiff's copyright count rests on works authored by Ms. Kemp-Rotan in her individual capacity rather than as a work made for hire of Studiorotan LLC, those claims belong to Ms. Kemp-Rotan personally and Studiorotan LLC lacks ownership and standing to enforce them. The chain of title from any individual author to Studiorotan LLC has not been pled or established, and any registration listing Studiorotan LLC as claimant without a valid written assignment from the actual author is unenforceable.

## EIGHTH AFFIRMATIVE DEFENSE

Plaintiff's copyright claims are barred because the asserted registrations were procured through inaccurate statements made to the Copyright Office. Registration Pau004210458, entitled "The Africatown International Design Idea Competition Why a Competition and 7 Other Unpublished Works," represents that the included works were unpublished and that they were created in 2023. In fact, materials from the asserted group of works were published on the public-facing Africatowndesign.com website operated in connection with the Africatown International Design Idea Competition no later than June 29, 2022, including in a publicly available "Overview PDF."

10

Plaintiff knew or should have known of the prior publication and the prior creation dates at the time of registration. Under 17 U.S.C. § 411(b), a registration cannot support an infringement action where inaccurate information was included with knowledge that it was inaccurate and where the inaccuracy, if known, would have caused the Register of Copyrights to refuse registration. Defendants reserve the right to seek a referral to the Register of Copyrights under section 411(b)(2) and to challenge each asserted registration on this ground.

## NINTH AFFIRMATIVE DEFENSE

Plaintiff is estopped from asserting that it was anything other than a paid Professional Competition Advisor with a defined scope of work. Plaintiff's own pleadings and declaration concede that Studiorotan LLC "would provide services as a Professional Competition Advisor in exchange for $100,000." The original scope of work Plaintiff itself provided to M.O.V.E. expressly identifies Plaintiff's role as Professional Competition Advisor. The American Institute of Architects' guidelines for design competitions, on which the parties relied, require that the Professional Advisor "have no other interest in the project, either as a designer, an investor, or an employee of the sponsor." Having held itself out to M.O.V.E., to participants, to jurors, and to the public as the neutral Professional Competition Advisor, Plaintiff is estopped from now claiming an ownership stake, a partnership, or any equitable interest in the competition or in the works created in furtherance of it.

## TENTH AFFIRMATIVE DEFENSE

Plaintiff's defamation count is barred in whole or in part by the substantial truth of any challenged statements; by the common-interest, conditional, and absolute privileges that apply to

11

communications among directors, officers, and members of M.O.V.E. and to communications with grantmakers, civic stakeholders, and law-enforcement personnel concerning matters of common concern; by the rhetorical-hyperbole and pure-opinion doctrines; and by the First Amendment's protections for speech on matters of public concern, including speech about a publicly funded community development project and the conduct of public-facing professionals retained in connection with it. Plaintiff is, at minimum, a limited-purpose public figure with respect to the Africatown International Design Idea Competition and must therefore plead and prove actual malice, which Plaintiff has not done and cannot do.

In addition, Plaintiff's defamation count fails because Plaintiff has not identified, with the specificity required, any false statement of fact concerning Studiorotan LLC. Statements concerning Renee Kemp-Rotan personally are not actionable by the LLC. Statements that Studiorotan LLC was a "paid contractor" rather than a "partner" are true and are consistent with Plaintiff's own admissions and with the Professional Competition Advisor role Plaintiff agreed to perform. Plaintiff has alleged no negligence or other fault, no unprivileged publication to a third party traceable to a specific defendant, and no actionable harm to Studiorotan LLC.

## ELEVENTH AFFIRMATIVE DEFENSE

Plaintiff's equitable claims, including its claims for unjust enrichment and any equitable relief sought in connection with its other counts, are barred by the doctrine of unclean hands. Plaintiff has, among other things, claimed sole ownership of competition materials and a competition name developed at M.O.V.E.'s direction and in collaboration with M.O.V.E.; applied for and obtained a federal trademark registration for "The Africatown International Design Idea

12

Competition" while naming Studiorotan LLC as sole owner despite knowing that the mark was used by and associated with M.O.V.E.'s competition; and submitted copyright applications containing inaccurate information about prior publication and creation dates. Plaintiff's misconduct goes directly to the subject matter of this case and bars equitable relief.

## TWELFTH AFFIRMATIVE DEFENSE

To the extent Plaintiff seeks to assert trademark, passing-off, or false-designation-of-origin theories under the Lanham Act or otherwise, those claims fail. Plaintiff has not identified a valid, protectable mark owned by Studiorotan LLC. The mark associated with the Africatown International Design Idea Competition is owned by and associated in the marketplace with M.O.V.E. as the sponsoring organization, not with Plaintiff. Plaintiff cannot show use in commerce by Defendants of any valid Studiorotan mark, in connection with the sale or advertising of any goods or services, in a manner likely to cause consumer confusion as to source, sponsorship, or affiliation.

## THIRTEENTH AFFIRMATIVE DEFENSE

Plaintiff's claims for injunctive and equitable relief are barred because any harm Plaintiff has suffered is fully compensable in money damages. Plaintiff has demonstrated a willingness to license its asserted intellectual property for money and has in fact accepted payment for the same uses it now challenges. Plaintiff has further failed to take reasonable steps to mitigate any claimed damages.

## FOURTEENTH AFFIRMATIVE DEFENSE

To the extent Plaintiff seeks to enforce any alleged oral or unsigned agreement that, by its terms, could not be performed within one year, that purports to assign or grant exclusive rights in copyrighted works, or that otherwise falls within the Statute of Frauds or 17 U.S.C. § 204(a), such agreement is unenforceable for lack of a writing signed by the party to be charged.

## DEFENDANTS' COUNTERCLAIMS

Counterclaim Plaintiff M.O.V.E. Gulf Coast Community Development Corporation ("M.O.V.E."), by and through undersigned counsel, asserts the following Counterclaims against Counterclaim Defendant Studiorotan LLC ("Studiorotan") and alleges as follows:

### Parties

1. Counterclaim Plaintiff M.O.V.E. is an Alabama nonprofit corporation with its principal place of business in Mobile County, Alabama. M.O.V.E. is the sponsor and organizer of the Africatown International Design Idea Competition.

2. Counterclaim Defendant Studiorotan is an Alabama limited liability company. Studiorotan is the original Plaintiff in this action.

### Jurisdiction and Venue

3. This Court has subject matter jurisdiction over Counts I, II, III, and IV of these Counterclaims pursuant to 28 U.S.C. § 1331 and 28 U.S.C. § 1338 because they arise under the Copyright Act, 17 U.S.C. § 101 et seq., the Lanham Act, 15 U.S.C. § 1051 et seq., and the

14

Declaratory Judgment Act, 28 U.S.C. § 2201.

4. This Court has supplemental jurisdiction over the remaining Counts pursuant to 28 U.S.C. § 1367 because they are so related to the federal claims and the underlying action that they form part of the same case or controversy.

5. Venue is proper in this District pursuant to 28 U.S.C. § 1391 and Studiorotan has consented to venue here by filing the underlying action.

**Factual Background**

6. M.O.V.E. is a community development corporation founded to support and advance the Africatown community in Mobile, Alabama, including the area and descendants associated with the Clotilda, the last known slave ship to bring captives from Africa to the United States.

7. In 2018, after the wreckage of the Clotilda was rediscovered, M.O.V.E. conceived of and began organizing an international design competition focused on the Africatown community. M.O.V.E. invited Studiorotan, through Kemp-Rotan, to participate as a paid Professional Competition Advisor for the competition that became the Africatown International Design Idea Competition (the "Competition").

8. M.O.V.E. originated the concept, the name, the geographic and programmatic scope, the four-site/sixteen-venue framework, the Africatown subject-matter content, and the community-development purpose of the Competition.

9. M.O.V.E. directed and supervised the Competition, controlled its branding and public-facing presentation, and was the sponsoring organization that the public, participants, jurors, sponsors, and grantmakers identified as the source of the Competition.

10. In 2022, M.O.V.E. tendered to Studiorotan a written Contract for Services that would have formalized the parties' working relationship and addressed scope of work, ownership of work product, license rights, term, and termination.

11. Studiorotan refused to sign that proposed agreement, never returned an executed counterpart, and no integrated written agreement was ever executed by both parties.

12. Studiorotan nonetheless continued to perform services as the Professional Competition Advisor for the Competition, invoiced M.O.V.E. for that work, and accepted $44,300 in payments from M.O.V.E. without ever conditioning its services or its delivery of competition materials on M.O.V.E.'s execution of the proposed written agreement.

13. All materials Studiorotan created in connection with the Competition were created at M.O.V.E.'s request, with M.O.V.E.'s input and substantive contributions, for M.O.V.E.'s Competition, and were delivered by Studiorotan to M.O.V.E. for the express purpose of running, promoting, and reporting on the Competition and the related community-development efforts.

14. Studiorotan knew and intended that M.O.V.E. would reproduce, display, distribute, and modify those materials in connection with operating the Competition, soliciting grants and sponsorships, and pursuing related programming.

15. M.O.V.E., through its directors, officers, contributors, and stakeholders, made independently copyrightable contributions to the competition materials, including without limitation the competition concept, name, structure, juror criteria, programmatic narrative, and Africatown subject-matter content, with the intent that those contributions be merged into a unitary whole with any contributions made by Studiorotan.

16. On January 11, 2024, Kemp-Rotan filed three applications with the United States Copyright Office and obtained the following registrations: (a) The Africatown International

Design Idea Competition Why a Competition and 7 Other Unpublished Works, Registration No. PAu 4-210-458; (b) Africatown Design Competition Poster 1, Registration No. VAu 1-521-715; and (c) Africatown Design Competition Poster 2, Registration No. VAu 1-521-718 (collectively, the "Asserted Registrations").

17. On information and belief, the Asserted Registrations contain inaccurate statements that, if known by the Register of Copyrights, would have caused the Register to refuse registration. Among other things, Registration No. PAu 4-210-458 represents that the works covered are unpublished and that they were created in 2023, when in fact materials within or substantially identical to the works covered by that registration were published on the public-facing Africatowndesign.com website operated in connection with the Competition no later than June 29, 2022, and were created in or before 2022. The Asserted Registrations also fail to identify the actual authors and contributors and fail to disclose M.O.V.E.'s contributions to the underlying works.

18. On information and belief, Studiorotan applied for, and obtained, United States Trademark Registration covering the mark THE AFRICATOWN INTERNATIONAL IDEA COMPETITION (the "Asserted Mark"), naming Studiorotan as the sole owner.

19. The Asserted Mark identifies M.O.V.E.'s Competition and is associated by consumers, participants, jurors, sponsors, grantmakers, and the public with M.O.V.E. as the source of the Competition. Studiorotan did not use the Asserted Mark in commerce as a source identifier for goods or services rendered by Studiorotan; rather, Studiorotan served as a paid Professional Competition Advisor on M.O.V.E.'s Competition.

20. On information and belief, in connection with its trademark application Studiorotan made statements to the United States Patent and Trademark Office regarding ownership of the

17

Asserted Mark and the absence of competing rights that were false, were made with knowledge of their falsity or with reckless disregard for the truth, and were material to the Patent and Trademark Office's decision to issue the registration.

21. After the Competition concluded, Studiorotan, through Kemp-Rotan, made and caused to be made statements to third parties — including representatives of the World Monuments Fund, the Mellon Foundation, the National Endowment for the Arts, the American Institute of Architects, the National Organization of Minority Architects, Africatown descendants, and other stakeholders — asserting or implying that M.O.V.E. had stolen, misappropriated, or improperly used Studiorotan's intellectual property; that M.O.V.E. had engaged in financial misconduct in connection with the Competition; and that M.O.V.E. was not the legitimate source or sponsor of the Competition.

22. Those statements were false. M.O.V.E. is the sponsor and source of the Competition, and any use by M.O.V.E. of competition materials is authorized by, at minimum, an implied non-exclusive license from Studiorotan and by M.O.V.E.'s own contributions to and ownership interest in those materials. Neither M.O.V.E. nor its officers engaged in the financial misconduct alleged by Studiorotan.

23. Studiorotan's and Kemp-Rotan's false statements, and their public assertion of sole ownership of the Competition and its associated marks and materials, have caused M.O.V.E. to lose or be denied grant funding, sponsorships, professional partnerships, and community goodwill, including with respect to the World Monuments Fund's Africatown designation process, the Mellon Foundation, and other grantmakers and partners. M.O.V.E. has suffered injury to its institutional reputation, standing in the community-development field, and ability to obtain funding.

24. As the AIA-style Professional Competition Advisor for the Competition, Studiorotan owed M.O.V.E. duties of loyalty, good faith, and neutrality. Under the American Institute of Architects' guidelines on which the parties relied, the Professional Competition Advisor must "have no other interest in the project, either as a designer, an investor, or an employee of the sponsor."

25. Studiorotan repeatedly held itself out as the Professional Competition Advisor for the Competition.

26. By claiming sole ownership of the Competition, the Asserted Mark, and the materials created in furtherance of the Competition, by obtaining federal trademark and copyright registrations in its own name, by demanding licensing payments from its own client, and by publicly disparaging M.O.V.E. to grantmakers and stakeholders, Studiorotan acted contrary to its duties of loyalty, good faith, and neutrality and against the interests of M.O.V.E.

**COUNT I**
**DECLARATORY JUDGMENT (COPYRIGHT) - IMPLIED LICENSE,**
**JOINT AUTHORSHIP, AND INVALIDITY OF REGISTRATIONS**

27. M.O.V.E. incorporates by reference each of the preceding paragraphs as if fully set forth herein.

28. An actual case or controversy exists between M.O.V.E. and Studiorotan concerning ownership, authorship, license rights, validity, and enforceability of the works covered by the Asserted Registrations.

29. Pursuant to 28 U.S.C. § 2201 and 28 U.S.C. § 2202, M.O.V.E. seeks a declaratory judgment that:

(a) M.O.V.E. holds an irrevocable, royalty-free, non-exclusive implied license to use, reproduce, display, distribute, modify, and prepare derivative works from the works covered by the Asserted Registrations in connection with operating, promoting, reporting on, and obtaining funding for the Africatown International Design Idea Competition and M.O.V.E.'s related community-development activities.

(b) M.O.V.E. is a joint author and co-owner of the works covered by the Asserted Registrations and, as such, may use and authorize use of those works without infringing.

(c) The Asserted Registrations are invalid and unenforceable under 17 U.S.C. § 411(b) because Studiorotan and Kemp-Rotan knowingly included inaccurate information in the applications, including but not limited to false representations regarding publication status, creation date, and authorship, which inaccurate information, if known to the Register of Copyrights, would have caused the Register to refuse registration.

(d) M.O.V.E. has not infringed, directly, contributorily, or vicariously, any valid copyright owned by Studiorotan in any of the works covered by the Asserted Registrations.

## COUNT II
### CANCELLATION OF FEDERAL TRADEMARK REGISTRATION
*(15 U.S.C. §§ 1064, 1119)*

30. M.O.V.E. incorporates by reference each of the preceding paragraphs as if fully set forth herein.

31. The Asserted Mark identifies M.O.V.E.'s Africatown International Design Idea Competition. The relevant public associates the Asserted Mark with M.O.V.E. as the source and sponsor of the Competition, not with Studiorotan.

32. M.O.V.E. is the prior and senior user of the Asserted Mark and any confusingly similar designation in connection with the Competition and related goods and services.

33. Studiorotan was not the owner of the Asserted Mark at the time it filed its application, did not use the Asserted Mark in commerce as a source identifier for goods or services rendered by Studiorotan, and is not entitled to register the Asserted Mark under the Lanham Act.

34. The continued registration of the Asserted Mark in Studiorotan's name damages M.O.V.E. by clouding M.O.V.E.'s superior rights, by creating a false appearance of Studiorotan ownership of M.O.V.E.'s Competition, and by interfering with M.O.V.E.'s ability to operate, promote, and obtain funding for the Competition and related programming.

35. Pursuant to 15 U.S.C. §§ 1064 and 1119, M.O.V.E. is entitled to an order directing the Director of the United States Patent and Trademark Office to cancel Studiorotan's registration of the Asserted Mark.

## COUNT III
## FRAUDULENT TRADEMARK REGISTRATION
### *(15 U.S.C. § 1120)*

36. M.O.V.E. incorporates by reference each of the preceding paragraphs as if fully set forth herein.

37. In its application to register the Asserted Mark, Studiorotan made false, material representations of fact to the United States Patent and Trademark Office, including representations regarding ownership of the Asserted Mark, exclusive use of the Asserted Mark in commerce, and the absence of others with the right to use the Asserted Mark or any confusingly similar designation.

21

38. Studiorotan made those representations with knowledge of their falsity, or in reckless disregard of the truth, and with the intent to induce the Patent and Trademark Office to issue the registration.

39. The Patent and Trademark Office reasonably relied on those false representations in issuing the registration.

40. M.O.V.E. has been injured by Studiorotan's fraudulent registration, including by loss of grant funding, sponsorships, and goodwill, and by being required to defend Studiorotan's ownership claims in this and other forums.

41. M.O.V.E. is entitled to its damages, costs, and attorneys' fees pursuant to 15 U.S.C. § 1120 and applicable law.

## COUNT IV
## FALSE DESIGNATION OF ORIGIN AND UNFAIR COMPETITION
### (15 U.S.C. § 1125(A))

42. M.O.V.E. incorporates by reference each of the preceding paragraphs as if fully set forth herein.

43. M.O.V.E. is the source of the Africatown International Design Idea Competition and the holder of senior common-law rights in the Asserted Mark and in the trade dress, branding, and goodwill associated with the Competition.

44. Studiorotan, in commercial advertising and promotion, has made false and misleading representations of fact concerning the origin, sponsorship, and approval of the Competition, the Asserted Mark, and the materials created in connection with the Competition, including by holding out Studiorotan as the sole source and owner of the Competition and its outputs in communications with grantmakers, sponsors, and stakeholders.

22

45. Studiorotan's misrepresentations are likely to cause confusion, mistake, or deception as to the origin, sponsorship, or approval of the Competition and as to the affiliation, connection, or association of Studiorotan with M.O.V.E.

46. Studiorotan's conduct constitutes false designation of origin, false or misleading representation of fact, and unfair competition in violation of 15 U.S.C. § 1125(a).

47. M.O.V.E. has been injured by Studiorotan's conduct and is entitled to injunctive relief, damages, disgorgement of profits, costs, and attorneys' fees as provided by 15 U.S.C. §§ 1116 and 1117.

## COUNT V
## BREACH OF FIDUCIARY DUTY

48. M.O.V.E. incorporates by reference each of the preceding paragraphs as if fully set forth herein.

49. By accepting the role of Professional Competition Advisor for the Competition, by representing itself as such to M.O.V.E., to participants, to jurors, and to the public, and by relying upon the AIA guidelines applicable to that role, Studiorotan undertook duties of loyalty, good faith, neutrality, and disclosure to M.O.V.E. consistent with the AIA Professional Advisor framework, including the duty to have no other interest in the project as a designer, investor, or employee of the sponsor.

50. Studiorotan breached those duties by, among other things, claiming sole ownership of the Competition, the Asserted Mark, and the materials created in furtherance of the Competition; obtaining federal trademark and copyright registrations in its own name without disclosure to or

authorization from M.O.V.E.; demanding licensing payments from M.O.V.E. for materials created within the scope of its Professional Competition Advisor engagement; and publicly disparaging M.O.V.E. to grantmakers, sponsors, and stakeholders.

51. M.O.V.E. has been injured by Studiorotan's breaches of duty in an amount to be proven at trial, including lost grant funding, lost sponsorships, lost professional partnerships, lost goodwill, and the costs of defending this action.

## COUNT VI
## TORTIOUS INTERFERENCE WITH BUSINESS RELATIONSHIPS

52. M.O.V.E. incorporates by reference each of the preceding paragraphs as if fully set forth herein.

53. M.O.V.E. had existing and prospective business relationships with, among others, the World Monuments Fund, the Mellon Foundation, the National Endowment for the Arts, the American Institute of Architects, the National Organization of Minority Architects, Visit Mobile, Africatown descendants and stakeholders, and prospective grantmakers and sponsors.

54. Studiorotan was aware of those relationships and prospective relationships, having worked with M.O.V.E. on the Competition and having been involved in M.O.V.E.'s outreach to those persons and organizations.

55. Studiorotan intentionally interfered with those relationships and prospective relationships by, among other things, communicating false and disparaging statements to those persons and organizations regarding M.O.V.E.'s ownership of and conduct in connection with the Competition; threatening or asserting baseless infringement and misuse claims; and otherwise inducing third parties to withhold funding, sponsorship, designation, or partnership from M.O.V.E.

24

56. Studiorotan acted without justification or privilege.

57. M.O.V.E. has been injured by Studiorotan's interference, including through the loss or impairment of grant funding, sponsorships, the World Monuments Fund Africatown designation process, and other professional and community partnerships, in an amount to be proven at trial.

## COUNT VII
## SLANDER OF TITLE / INJURIOUS FALSEHOOD

58. M.O.V.E. incorporates by reference each of the preceding paragraphs as if fully set forth herein.

59. M.O.V.E. owns or has substantial rights in the Competition, the Asserted Mark, and the materials created in connection with the Competition, and has commercially valuable goodwill associated with each.

60. Studiorotan has published false statements disparaging M.O.V.E.'s rights in the Competition, the Asserted Mark, and the related materials, including by claiming sole ownership and demanding that M.O.V.E. cease use of items in which M.O.V.E. has at minimum implied license rights and, as to many items, ownership rights of its own.

61. Studiorotan made those statements with knowledge of their falsity, or with reckless disregard for the truth, and with the intent that they be relied upon by grantmakers, sponsors, and other third parties.

62. M.O.V.E. has suffered special damages as a proximate result, including the loss or impairment of grant funding, sponsorships, and goodwill, in an amount to be proven at trial.

25

**PRAYER FOR RELIEF**

WHEREFORE, Counterclaim Plaintiff M.O.V.E. respectfully requests that the Court enter judgment in its favor and against Counterclaim Defendant Studiorotan as follows:

(a) Declaring, pursuant to 28 U.S.C. §§ 2201 and 2202, that M.O.V.E. holds an irrevocable, royalty-free, non-exclusive implied license to use the works covered by the Asserted Registrations; that M.O.V.E. is a joint author and co-owner of those works; that the Asserted Registrations are invalid and unenforceable under 17 U.S.C. § 411(b); and that M.O.V.E. has not infringed any valid copyright owned by Studiorotan;

(b) Ordering, pursuant to 15 U.S.C. §§ 1064 and 1119, the cancellation of Studiorotan's registration of the Asserted Mark;

(c) Awarding M.O.V.E. damages, including treble damages where authorized, for Studiorotan's violations of 15 U.S.C. §§ 1120 and 1125(a), and for breach of fiduciary duty, tortious interference, and slander of title;

(d) Awarding M.O.V.E. its costs and reasonable attorneys' fees as authorized by 15 U.S.C. § 1117, 17 U.S.C. § 505, and other applicable law;

(e) Enjoining Studiorotan from further false designation of origin and unfair competition with respect to the Competition and the Asserted Mark; and

26

(f) Granting such other and further relief as the Court deems just and proper.

## JURY DEMAND

Counterclaim Plaintiff M.O.V.E. demands a trial by jury on all Counterclaims so triable.

Dated May 14, 2026

By: /s/ Douglas. L. Bridges

Douglas L. Bridges (1974N06L)
453 Dauphin Street
Mobile, Alabama 36602
Phone: (251) 289-9787
doug@adamsiplaw.com

*Attorney for Defendants*

**CERTIFICATE OF SERVICE**

I hereby certify that a true and correct copy of the foregoing has been provided electronically to all parties via ECF on May 14, 2026.

/s/Douglas L. Bridges/

Douglas L. Bridges, Esq.

ADAMSIP, LLC

453 Dauphin Street

Mobile, AL, 36602

Tel:(251)289-9789

doug@adamsiplaw.com