FILED
2026 Jul-15 AM 06:55
U.S. DISTRICT COURT
N.D. OF ALABAMA

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ALABAMA
SOUTHERN DIVISION

| | | |
|---|---|---|
| STUDIOROTAN LLC, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Case No. 2:25-cv-00020-GMB |
| | ) | |
| VICKII J. HOWELL, and | ) | |
| M.O.V.E. GULF COAST CDC, | ) | |
| | ) | |
| Defendants. | ) | |

**DEFENDANTS' OPPOSITION TO PLAINTIFF'S MOTION TO EXTEND THE DISCOVERY DEADLINE (DOC. 78)**

Defendants Vickii J. Howell and M.O.V.E. Gulf Coast CDC oppose Plaintiff Studiorotan LLC's Motion to Extend the Discovery Deadline. Doc. 78. This is Studiorotan's third request to extend these deadlines. The Court granted the first two, and in granting the last one it told the parties that it "does not anticipate the need for any further extensions and will consider another motion to extend these deadlines only for good cause." Doc. 69 at 1. Three weeks ago the Court found that Studiorotan had not been diligent in prosecuting this case. Doc. 76. The present motion asks the Court to reach the opposite conclusion on a record that has only gotten worse, and it does so through a memorandum that misstates the scheduling order, the correspondence between counsel, and the discovery record. The

correspondence is attached as Exhibits A through K so the Court can see the record for itself.

## BACKGROUND

The Court's scheduling order, as amended at Studiorotan's request, requires that "[a]ll discovery must be commenced in time to be completed by July 31, 2026." Doc. 69 at 1. Under Rules 33(b)(2) and 34(b)(2)(A), the last day to serve written discovery that could be completed by that deadline was July 1, 2026.

Defendants served their interrogatories and requests for production on Plaintiff's counsel on May 12, 2026, fifty days before that date. Ex. A. Two minutes later, Plaintiff's counsel replied: "Received. Will respond back with ours by Friday." Ex. B. "Friday" was May 15, 2026. No discovery came on May 15, or in the seven weeks that followed. During that period Studiorotan filed an amended complaint without leave, which the Court struck (Docs. 71, 72), and a motion for leave to amend, which the Court denied for lack of good cause and diligence (Doc. 76). Studiorotan's responses to Defendants' discovery, due June 11, did not come either. Defendants sent a Rule 37(a)(1) letter on July 2 (Ex. C); Plaintiff's counsel responded on July 3, promising responses by July 10 and representing that he had "entered this matter on June 15, 2026" (Ex. D), although his notice of appearance was filed April 30, 2026 (Doc. 60). In response, Defendants corrected that

misstatement by letter dated July 6 and served a Rule 11 motion upon Plaintiff. Ex. E.

Studiorotan's own discovery requests arrived later on July 6, 2026, five days after the last day for timely service, bearing certificates of service dated July 5. Defendants served written objections on the ground of untimeliness the same day and stated, with the supporting grounds, that they would oppose any motion to extend: "An extension requires good cause under Rule 16(b)(4), and the Court has already found that Studiorotan did not act diligently, that no external factor prevented it from pursuing discovery, and that it had served nothing as of May 12, 2026." Ex. F at 1.

Studiorotan's responses to Defendants' discovery then arrived in three conflicting waves: verified responses on July 10 whose answers consist largely of unanswered "[CLIENT TO CONFIRM]" placeholders; a second, standalone set of production responses transmitted July 11 bearing a July 9 certificate of service and contradicting the verified set on dispositive facts; and a "Second Amended, Unified, and Corrected" set on July 14, verified by Ms. Kemp-Rotan, swearing to a third version of the facts. Defendants identified the deficiencies in a detailed letter on July 11, as Section II of the Court's Initial Order requires, and asked for a conference on July 13 or 14. Ex. G. Defendants transmitted that letter, with a draft joint stipulation, on Saturday morning, July 11. Ex. I. Plaintiff's counsel replied on

Sunday, July 12, committing in writing to serve "amended, corrected, unified interrogatory responses and a supplemental document production on or before July 15, 2026," and confirming his availability for the conference. Ex. J. The parties conferred by telephone on the afternoon of July 13. On July 14, Plaintiff served amended responses and a re-production; they remain deficient in the respects set out in Defendants' July 15 letter, which is being served before this filing. Ex. K. That evening, at 9:08 p.m., Plaintiff filed this motion and a partial dismissal of two of its five claims, mentioning neither the July 13 conference nor the July 15 commitment. Docs. 78, 79.

## ARGUMENT

### A. The motion rests on a misstatement of the scheduling order.

The memorandum's central legal contention is that the Federal Rules "do not impose a window within which discovery must be served" and require "only that the service precede the deadline." Doc. 78-1 at 8. The memorandum never quotes the scheduling order. The order does not set a bare completion date; it requires that all discovery "be commenced in time to be completed by July 31, 2026." Doc. 69 at 1. Requests served July 6, with responses due August 5, cannot be completed by July 31 and are therefore untimely under the order's express terms. Courts in this district routinely enforce this language to require that written discovery be served at least thirty days before the discovery deadline. Studiorotan's argument that its

responses would fall "within the thirty-day extension Plaintiff is requesting," Doc. 78-1 at 8, concedes the point: the requests are timely only if the Court first rescues them.

Defendants' objections to those requests were proper. An objection that requests are untimely under the scheduling order is a complete, threshold ground that applies uniformly to every request; Rule 33(b)(4)'s specificity requirement does not oblige a party to write thirty-five essays about requests it has no duty to answer at all. And Defendants did not need to state what was withheld under Rule 34(b)(2)(C), because nothing was reviewed or withheld on a document-by-document basis; the requests were objected to in their entirety as served too late to require any response.

**B. Studiorotan cannot show good cause, because it cannot show diligence.**

Rule 16(b)(4) permits modification "only for good cause," and the good cause standard "precludes modification unless the schedule cannot be met despite the diligence of the party seeking the extension." *Sosa v. Airprint Sys., Inc.*, 133 F.3d 1417, 1418 (11th Cir. 1998). This Court applied that standard to this plaintiff three weeks ago and found diligence lacking: the appearance of new counsel "does not relieve Studiorotan of its burden to demonstrate diligence and good cause," parties "are not entitled to re-litigate the case each time new counsel appears," and a change in litigation strategy is not good cause. Doc. 76 at 7–8. The memorandum

does not mention those holdings. It simply re-argues the same new-counsel narrative the Court has already rejected.

The actual chronology forecloses diligence. Counsel appeared April 30. On May 12 he received Defendants' discovery and promised, in writing, that Studiorotan's own discovery would follow "by Friday," May 15. Exs. A, B. It was served Monday, July 6, fifty-two days after that promise and five days after the last timely date. The excuses offered in the memorandum do not bridge that gap. The North Carolina bar interview occurred "[w]ithin two weeks of appearing," Doc. 78-1 at 3, that is, in mid-May; it does not explain June or July. The power outage lasted "approximately one week" during the "final window," id., which presupposes counsel had already left service to the final days of a window that closed July 1. And the memorandum concedes the requests were "finalized and ready for transmission by July 5, 2026," id. at 3–4, four days after the deadline had already passed. A one-day email problem on July 5 is not the cause of a miss that had already happened. If anything, the memorandum's admission that requests bearing a July 5 certificate of service were transmitted July 6 confirms that Studiorotan's certificates of service do not reliably state when things were served.

The Court also warned, when it granted Studiorotan its second extension, that it did not anticipate another. Doc. 69 at 1. Studiorotan used the extension it received not to conduct discovery but to file an unauthorized amended complaint,

an unsuccessful motion for leave, and a "Notice of Supplemental Authority" attaching newly created assignment documents. Docs. 71–73, 76, 77. Diligence in pursuing amendments the Court rejected is not diligence in pursuing discovery.

The memorandum's own description of the case defeats its claim that the ninety-two days were consumed by mastering a complex record. Counsel describes the case he inherited as including "trademark infringement under 15 U.S.C. §§ 1114 et seq." with "four registered intellectual property rights" and "a damages figure exceeding $267,440." Doc. 78-1 at 2. The operative Complaint contains no trademark count, asserts three copyright registrations, and pleads no such figure; Count III is unjust enrichment and Count IV is tortious interference. Doc. 1. The dismissal notice filed the same evening repeats the errors, describing "Count III (Trademark Infringement, 15 U.S.C. §§ 1114 et seq.)" and "Count IV (Tortious Interference with Business Relations and Unjust Enrichment)." Doc. 79 at 1. The motion calls this a "five-count case" while the memorandum calls it a "four-count federal case." Doc. 78 at 2; Doc. 78-1 at 13. The memorandum also states Plaintiff's "total production" as "Pages of Bates-stamped documents," with the number left blank, and its safe-harbor discussion ends in a fragment: "See dants' blanket discovery refusal is no longer a live issue in this case." Doc. 78-1 at 5–6. An attorney who devoted the discovery window to absorbing this record would

know which claims are in it. The misdescriptions are not evidence of diligence; they are evidence that the complexity narrative was drafted rather than lived.

**C. The motion violates the Initial Order twice over, in ways this counsel has already been warned about.**

The motion also asks the Court to order "Defendants to respond to Plaintiff's discovery." Doc. 78-1 at 2. Section II of the Initial Order requires, before any discovery motion, a letter identifying each issue and the relief sought, a good-faith conference in person or by telephone, and a joint stipulation setting out each side's contentions and authority. Studiorotan did none of this. It sent no letter, requested no conference, and prepared no stipulation; its certificate of conference describes only Defendants' July 6 statement, made with full supporting grounds (Ex. F), that an extension motion would be opposed. By contrast, Defendants' July 11 deficiency letter (Ex. G) followed the Initial Order to the letter and requested a conference on July 13 or 14. The request for an order compelling discovery should be denied or stricken for failure to comply with the Initial Order.

The motion also fails a requirement the Court has already called to this counsel's attention. The Initial Order requires that "an indication of whether the motion is OPPOSED or UNOPPOSED" "appear on the first page of every motion or brief directly below the case number in the caption," and provides that nonconforming motions "may be stricken." Doc. 78 carries no such indication anywhere on its face. Nor did Plaintiff ask Defendants whether they opposed this

motion before filing it; the "Certificate of Conference" quotes a statement from Defendants' July 6 letter about a motion that had not yet been drafted (Ex. F). It does not mention that the parties actually conferred by telephone on the afternoon of July 13, the day before this motion was filed, at Defendants' initiative and on Defendants' issues, or that Plaintiff's counsel had committed in writing on July 12 to complete his discovery obligations "on or before July 15, 2026." Exs. I, J. A certificate that omits the conference that occurred while describing one that did not is not the certification the Initial Order contemplates. This is not a first offense. When Studiorotan's current counsel filed his motion to extend deadlines in May, the Court noted that "[t]he motion does not indicate whether it is opposed or unopposed," directed counsel to the Initial Order, and "warn[ed] that the failure to follow its instructions could lead to a summary denial of any future motions." Doc. 69 at 1 n.1. The next month, the Court struck Studiorotan's amended complaint for failure to follow the Scheduling Order and Rules 15 and 16. Doc. 72. The present motion is the third procedural default in as many months, and the summary denial the Court warned of would be well within its discretion.

**D. The equities and Rule 1 favor enforcement, not another extension.**

The memorandum argues that Defendants forfeited any reliance interest because they "have taken no action." Doc. 78-1 at 12. Defendants took every action the schedule required: they served their discovery fifty days before the

service cutoff, sent the required conference letters when responses did not come, served timely objections to the late requests, and prepared their case for the July 31 close and the September 28 dispositive motion deadline. What Studiorotan calls a "scheduling technicality" is the third iteration of a schedule the Court twice extended for Studiorotan's benefit. The prejudice of another month is concrete: Defendants, a nonprofit community organization and its founder, would be required to answer sixty requests served late, several of which seek discovery about a registration (TXu 2-484-800) and claims that appear in no operative pleading and that the Court declined to allow into the case. Doc. 76. Rule 1 is not served by extending a case so that a party can litigate claims the Court has already excluded.

*Malautea v. Suzuki Motor Co.*, 987 F.2d 1536 (11th Cir. 1993), on which the memorandum relies, involved a defendant sanctioned for obstructing discovery obligations it actually had. Defendants here had no obligation to answer untimely requests, and the accusation that they used the Rules as "sword and shield" inverts the record: the party that ignored its response deadline, promised discovery "by Friday" and served it seven weeks later, and served three conflicting sets of responses in five days is not the victim of procedural gamesmanship.

The memorandum's remaining authorities fare no better. *Young v. City of Palm Bay*, cited for the proposition that "[r]igid enforcement of a scheduling order

that produces a fundamentally unjust result is disfavored," Doc. 78-1 at 6, holds nothing of the kind. Young affirmed a district court's refusal to grant a fifth extension of time and its decision to strike the untimely filings, and its actual language points the other way: "Deadlines are not meant to be aspirational; counsel must not treat the goodwill of the court as a sign that, as long as counsel tries to act, he has carte blanche permission to perform when he desires," because "[i]n the courts, there is room for only so much lenity." *Young v. City of Palm Bay, Fla.*, 358 F.3d 859, 864 (11th Cir. 2004). Sosa likewise affirmed the denial of an untimely amendment for lack of diligence, 133 F.3d at 1419, and *Romero v. Drummond Co.* affirmed the denial of leave sought after the scheduling deadline because the movants had not been diligent, 552 F.3d 1303, 1319 (11th Cir. 2008). Every case the memorandum cites enforced the schedule against the party that missed it.

**E. The memorandum's characterizations of the record are not accurate.**

The Court should be aware of several statements in the motion papers that the attached correspondence contradicts. First, the certificate of conference states that Defendants announced opposition "before any supporting grounds were articulated." Defendants' July 6 letter stated the grounds in full: Rule 16(b)(4), this Court's diligence findings in Doc. 76, and the warning in Doc. 69. Ex. F. Second, the memorandum describes Defendants' Rule 11 motion as "demanding dismissal

of the entire case … with a four-business-day ultimatum." Doc. 78-1 at 4. The Rule 11 motion was served, not filed, with the full twenty-one-day safe harbor Rule 11(c)(2) provides, and it says so on its face; the July 10 date in Defendants' letter was the date Studiorotan itself had promised for its overdue discovery responses. Exs. D, E. Third, the memorandum states that Plaintiff "answered every one of Defendants' fifty-four discovery requests with substantive, verified responses." Doc. 78-1 at 1. The July 10 verified answers left at least sixteen interrogatories answered with bracketed instructions reading "[CLIENT TO CONFIRM]," and the sets served on July 10, 11, and 14 contradict one another on the works' creation dates, publication, and licensing, each version verified or certified. Exs. G, K. Fourth, the July 14 production cover letter represents that documents were re-produced with "original document metadata — including author, creation date, and application of origin — preserved in the file properties." Ex. H. The produced files contain no author, no creation date, and no origin application in their properties. These twenty-four files comprising four-hundred-and-four pages were regenerated with a PDF utility that stripped the metadata the letter claims to preserve. The memorandum's related assertion that the July 14 production "address[ed] every point in Defendants' deficiency letter," Doc. 78-1 at 5, is also wrong: the re-production retains the annotations Defendants identified, withdraws documents from the original production, renumbers the Bates series so that it no longer

matches even Plaintiff's own index, and defers every substantive document category to an undated "Volume 3." The remaining and newly introduced deficiencies are detailed in Defendants' July 15 letter. Ex. K. Fifth, the memorandum asserts that the partial dismissal "extinguished" the Rule 11 motion. The motion's grounds directed at Count II, the retained tortious interference claim, and the Notice at Doc. 77 are untouched by the dismissal of Counts I and V, and a voluntary dismissal does not deprive the Court of the power to impose Rule 11 sanctions. *Cooter & Gell v. Hartmarx Corp.*, 496 U.S. 384, 395–96 (1990). Finally, the papers describe this as a case of "trademark infringement under 15 U.S.C. §§ 1114" with "four registered intellectual property rights" and $267,440 in damages. The operative Complaint contains no trademark count; Count III is unjust enrichment. The Court denied Studiorotan leave to add the claims and registrations it now describes as if they were pleaded. Doc. 76.

## CONCLUSION

Studiorotan received two extensions, a warning that there would not be a third absent good cause, and a ruling that its conduct did not constitute diligence. Nothing in the present motion changes that record; the motion depends on it being forgotten. Defendants respectfully request that the Court deny the Motion to Extend the Discovery Deadline, deny or strike the embedded request for an order

compelling discovery for failure to comply with the Initial Order and grant such other relief as the Court deems just.

Dated: July 15, 2026

Respectfully submitted,

/s/ Douglas L. Bridges
Douglas L. Bridges (1974N06L)
ADAMSIP, LLC
453 Dauphin Street
Mobile, Alabama 36602
Phone: (251) 289-9787
doug@adamsiplaw.com
Counsel for Defendants

**EXHIBIT LIST**

**Exhibit A —** Email from D. Bridges to G. Truesdale, May 12, 2026, 3:33 PM, serving Defendants' First Set of Interrogatories and Requests for Production

**Exhibit B —** Email from G. Truesdale to D. Bridges, May 12, 2026, 3:35 PM ("Received. Will respond back with ours by Friday.")

**Exhibit C —** Letter from D. Bridges to G. Truesdale, July 2, 2026 (Rule 37(a)(1) letter regarding overdue responses)

**Exhibit D —** Letter from G. Truesdale to D. Bridges, July 3, 2026 (promising responses by July 10; asserting counsel "entered this matter on June 15, 2026")

**Exhibit E —** Letter from D. Bridges to G. Truesdale, July 6, 2026 (correcting the June 15 assertion; serving Rule 11 motion under the 21-day safe harbor)

**Exhibit F —** Letter from D. Bridges to G. Truesdale, July 6, 2026 (untimely discovery; grounds for opposition to any extension), followed by Defendants' Objections to Plaintiff's First Set of Interrogatories and First Set of Requests for Production

**Exhibit G —** Letter from D. Bridges to G. Truesdale, July 11, 2026 (deficiency letter under Section II of the Initial Order; conference requested for July 13 or 14)

**Exhibit H —** Letter from G. Truesdale to D. Bridges, July 14, 2026 (amended production cover letter representing a "metadata-preserving format")

**Exhibit I —** Email from D. Bridges to G. Truesdale, July 11, 2026, 11:29 AM (transmitting the deficiency letter and draft joint stipulation; requesting the conference)

**Exhibit J —** Email from G. Truesdale to D. Bridges, July 12, 2026, 11:57 AM (committing to serve corrected responses and supplemental production "on or before July 15, 2026"; confirming conference availability)

**Exhibit K —** Letter from D. Bridges to G. Truesdale, July 15, 2026 (deficiencies in the July 14 amended responses and re-production)

**CERTIFICATE OF SERVICE**

I hereby certify that on July 15, 2026, a true and correct copy of the foregoing Opposition, with Exhibits A through K, was filed with the Clerk of Court using the CM/ECF system, which will serve all counsel of record, including Gerard Lynn Truesdale, Esq., counsel for Plaintiff.

/s/ Douglas L. Bridges