FILED
2026 Jul-15 AM 11:42
U.S. DISTRICT COURT
N.D. OF ALABAMA

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF ALABAMA**

| | | |
|---|---|---|
| **STUDIOROTAN LLC,** | ) | |
| **Plaintiff,** | ) | |
| | ) | |
| **v.** | ) | |
| | ) | **Case No:2:25-cv-00020-GMB** |
| | ) | |
| **VICKII J. HOWELL and M.O.V.E. GULF COAST** | ) | |
| **COMMUNITY DEVELOPMENT CORPORATION,** | ) | |
| **Defendants.** | ) | |

**PLAINTIFF'S REPLY IN SUPPORT OF MOTION TO EXTEND THE DISCOVERY DEADLINE (DOC. 78)**

## INTRODUCTION

Defendants' opposition is a masterclass in selective memory. They devote sixteen pages to Plaintiff's delays while remaining completely silent on the one fact that actually matters: after eighteen months of litigation, Defendants have produced zero documents and provided zero substantive responses to any discovery request. They filed seven counterclaims seeking affirmative relief, demanded and received hundreds of pages from Plaintiff, and now ask this Court to close discovery before Plaintiff can take a single deposition or obtain a single document from them. This is not zealous advocacy. It is the precise form of discovery gamesmanship the Eleventh Circuit condemned in *Malautea v. Suzuki Motor Co.*, 987 F.2d 1536, 1542 (11th Cir. 1993).

Defendants cannot wield the Federal Rules as a sword to extract Plaintiff's documents while using those same Rules as a shield against their own disclosure obligations. This Court should not reward that strategy by closing discovery.

Since this motion was filed on July 14, 2026, Plaintiff has: served corrected verified interrogatory responses; conducted a Rule 37(a)(1) conference on July 13, 2026; transmitted Volume 3 of its document production, including the August 2, 2023 email in which Defendant Howell herself acknowledges a "remaining balance" owed to Plaintiff and conditions payment on surrender of intellectual property rights; committed in writing to completing production of all remaining documents by July 18, 2026; and addressed every deficiency identified in Defendants' July 15, 2026 letter. Discovery is not stalled. It is happening now for the first time, in a case this Court has already found was conducted with "little (if any) discovery" by prior counsel. Doc. 76. The motion should be granted

**CORRECTIVE BACKGROUND**

Plaintiff acknowledges two procedural deficiencies that the opposition correctly identifies. First, the motion omitted the "OPPOSED" notation required by the Initial Order, Doc. 24. That omission was inadvertent; this Reply corrects it. Second, the Certificate of Conference referenced Defendants' July 6, 2026 announcement rather than the July 13, 2026 telephone conference at which counsel actually conferred. The conference occurred. This filing cures both deficiencies.

Plaintiff also acknowledges that Doc. 78-1 misdescribed Count III as trademark infringement and referenced $267,440 in damages and four registered IP rights. These were errors. The operative complaint contains no trademark count. Count III is unjust enrichment; Count IV is tortious interference. A Notice of Errata filed contemporaneously with this Reply corrects the record. These misdescriptions did not affect the legal analysis on the discovery motion.

Finally, Plaintiff's July 10, 2026 interrogatory responses contained placeholder text in at least sixteen answers. Those responses were superseded in their entirety by the Second Amended,

Unified, and Corrected responses verified by Ms. Kemp-Rotan on July 14, 2026. The inconsistencies identified in Defendants' July 15 letter are addressed in the Volume 3 production.

## ARGUMENT

### A. Doc. 76's Diligence Finding Governs Amendment, Not Discovery.

Defendants invoke Doc. 76 at every turn, arguing the Court has "already found diligence lacking" and that this motion "simply re-argues the same new-counsel narrative the Court has already rejected." Doc. 81 at 5–6. This fundamentally misreads Doc. 76's holding and scope.

Doc. 76 denied leave to amend the complaint to add a federal trademark count. The diligence inquiry for amendment under Rule 16(b)(4) asks whether the moving party knew of the potential new claims in time to include them in the original pleading, a backward-looking inquiry into whether prior counsel should have pleaded differently. That is categorically not the inquiry here.

The diligence inquiry for a discovery extension asks whether current counsel has been diligent in pursuing the specific discovery at issue. *Sosa v. Airprint Sys., Inc.*, 133 F.3d 1417, 1418 (11th Cir. 1998). Doc. 76 made no finding about discovery diligence because no discovery motion was before the Court. Defendants' attempt to import an amendment-diligence finding into a discovery-diligence analysis is unsupported by the text of Doc. 76 or the rules it applied.

*Sosa* focuses the diligence inquiry on current counsel's conduct. Current counsel appeared April 30, 2026. The Court's own finding that prior counsel conducted "little (if any) discovery," Doc. 76, establishes precisely why the schedule cannot be met: fourteen months of discovery work was never done. Under *Sosa*, that is the hallmark of good cause, not a reason to deny it.

Defendants rely heavily on this Court's prior statement that it "does not anticipate the need for any further extensions." Doc. 69 at 1. That statement was made before current counsel appeared and before Plaintiff had served any discovery. The record has now changed materially. Plaintiff has since produced three volumes of documents and is completing production on an expedited basis. The Court's prior concern about repeated delays by the same counsel no longer applies with equal force to new counsel who inherited a case with "little (if any) discovery." Doc. 76.

**B. Current Counsel Has Demonstrated the Diligence That Good Cause Requires.**

The gap between May 15 and July 6, 2026, was driven by overlapping, non-delegable professional obligations and an unexpected technological disruption. First, counsel was subject to a long-standing, mandatory appearance before the North Carolina Board of Law Examiners in Raleigh regarding a comity admission application. This appearance required out-of-state travel and intensive, non-delegable preparation that severely compressed the timeline immediately surrounding current counsel's entry into this action.

Second, at the precise moment drafts were compiled for final verification, an extended power outage at Plaintiff's primary location completely severed attorney-client communications for approximately one week. These circumstances made it impossible to complete the necessary client review and verification in time. Between July 10 and July 16, just six days, Plaintiff served three rounds of corrected responses, conducted a Rule 37 conference, and produced Volume 3 containing the critical August 2, 2023 Howell email. That is diligence. Under *Sosa v. Airprint Sys., Inc.*, 133 F.3d 1417, 1418 (11th Cir. 1998), the question is whether current counsel has been diligent since appearing. The record since July 10 answers that question affirmatively.

**C. The August 2, 2023 Howell Email.**

Among the documents produced in Volume 3 is an August 2, 2023 email from Defendant Howell to Renee Kemp-Rotan. That email speaks for itself:

"We still disagree on key terms of the contract you shared with us in June, especially regarding 'joint possession' of the design ideas that came in through the Competition. . . . The professional terms and conditions of that relationship should be clearly spelled out in a revised contract, so that M.O.V.E. can properly address Studiorotan's remaining balance."

This is not a peripheral document. It is direct, contemporaneous written evidence from Defendant Howell herself acknowledging: (1) a "remaining balance" is owed to Studiorotan for services rendered; (2) the contractual relationship was actively disputed as late as August 2023; and (3) Defendants sought to condition payment of an acknowledged debt on Plaintiff's surrender of intellectual property rights.

An implied license arises from the copyright holder's consent to another's use, demonstrated by the totality of the parties' course of conduct. *See Korman v. HBC Florida, Inc.*, 182 F.3d 1291, 1295 (11th Cir. 1999). A party that conditions payment of an acknowledged debt on the copyright holder's surrender of ownership rights is not exercising rights it already has; it is attempting to acquire rights it does not possess. That is not an implied license. That is attempted coercion.

Discovery into the surrounding communications, negotiations, and payment history is essential to litigating this claim. Defendants' refusal to produce a single document on these exact

topics, while simultaneously filing seven counterclaims that turn on the same facts, is indefensible.

Had prior counsel conducted any meaningful discovery, this email would have been central to this litigation from the start. The fact that it surfaced only in the sixth week of the new counsel's engagement is itself evidence that the schedule cannot be met, through no fault of the current counsel.

**D. Defendants Cannot Simultaneously Wield Seven Counterclaims and Bury the Evidence Those Claims Require.**

Defendants have filed seven counterclaims seeking affirmative relief, claims for declaratory judgment of copyright invalidity, cancellation of trademark registrations, breach of fiduciary duty, tortious interference, and slander of title. Docs. 67, 70. Every one of those claims requires the very discovery they now seek to block.

They cannot file counterclaims demanding adjudication of the full factual record and then hide that record behind a scheduling technicality. Rule 1 does not permit Defendants to use this Court's processes offensively while evading them defensively. The Eleventh Circuit has recognized that using the Federal Rules as both a sword to advance affirmative claims and a shield against disclosure obligations is precisely the type of discovery gamesmanship that warrants judicial correction. *Malautea*, 987 F.2d at 1542.

Each of Defendants' counterclaims depends on the history of the parties' relationship, the communications with the World Monuments Fund, the National Endowment for the Arts, AIA, and NOMA, the provenance of the registered works, and the payment and contract history between the parties. Plaintiff's pending discovery requests go to exactly this record. Denying this motion does not protect Defendants from discovery. It prevents *both sides* from developing the complete

evidentiary record that Defendants themselves placed at issue. The Court should not foreclose the evidence on which seven pending counterclaims depend.

**E. Defendants' Misrepresentation Attack.**

Defendants devote substantial space to the June 15 date reference in prior correspondence, arguing Plaintiff's counsel misrepresented when he entered the case. The record speaks clearly: undersigned counsel filed a Notice of Appearance on April 30, 2026. Doc. 60. The June 15 reference in a July 3 letter was imprecise. April 30, 2026, is the operative appearance date, as the docket reflects.

What the docket also reflects is this: when current counsel appeared on April 30, 2026, the case had been pending for over fifteen months with no written discovery served by Plaintiff and no depositions taken, facts this Court already documented in Doc. 76. The delay in serving Plaintiff's discovery after April 30 is explained above. The delay in Defendants producing *anything* after eighteen months of litigation has no explanation in their sixteen-page opposition.

**F. Defendants' Blanket Objections Do Not Constitute Legal Prejudice.**

> Defendants argue they would be prejudiced because they "served their discovery fifty days before the service cutoff, sent the required conference letters when responses did not come, served timely objections to the late requests, and prepared their case for the July 31 close." Doc. 81 at 9–10. This describes compliance with their own procedural obligations. It is not a legal prejudice from an extension.

"Legal prejudice" under Rule 16 requires more than inconvenience or additional litigation costs *Romero v. Drummond Co.*, 552 F.3d 1303, 1319 (11th Cir. 2008). Defendants do not identify a defense that would be lost, evidence that would become unavailable, or any reliance interest

undermined by an extension. They identify only the burden of responding to sixty discovery requests, the ordinary burden of every civil defendant in federal court.

Defendants' "timely objections" to Plaintiff's discovery were asserted solely on untimeliness grounds. Rule 26(g)(1)(B) requires that objections not be "interposed for any improper purpose, such as to harass, cause unnecessary delay, or needlessly increase the cost of litigation." Blanket refusal to engage substantively with any discovery request by a party that has filed seven counterclaims requiring the identical factual record is precisely the kind of conduct that warrants scrutiny.

Most tellingly, Defendants have produced zero documents and provided zero substantive responses to any interrogatory in this eighteen-month litigation. They have sent deficiency letters, filed oppositions, and served blanket objections. They have not contributed one page to the evidentiary record. The Court should weigh that asymmetry carefully when Defendants invoke prejudice.

## CONCLUSION

This is no longer a case in which "no discovery" has occurred. It is a case in which one side has produced three volumes of documents, served three rounds of corrected responses, and is completing production this week. In contrast, the other side has produced nothing, answered nothing substantively, and now asks the Court to shut down discovery before Plaintiff can obtain even one document or take one deposition.

The newly produced August 2, 2023, Howell email proves that Defendants' implied license defense is pretextual. The seven pending counterclaims prove that Defendants themselves need

this factual record developed. And Defendants' total non-production for eighteen months proves the asymmetry this Court should not reward.

The Federal Rules do not tolerate that asymmetry. Rule 1 requires the just determination of this action. Denying this motion would have the opposite effect. For the foregoing reasons, Plaintiff respectfully requests that the Court grant the Motion to Extend the Discovery Deadline (Doc. 78) and extend the discovery deadline to August 31, 2026, and correspondingly extend the dispositive motion deadline.

Respectfully submitted,

/s/ Gerard Lynn Truesdale
GERARD LYNN TRUESDALE
Gerard Lynn Truesdale (ASB-9517B00T)
Attorney Gerard L. Truesdale, PLLC
120 19th Street North, Suite 201
Birmingham, Alabama 35203
(205) 335-0072
gerardt@attorneytruesdale.com
*Counsel for Plaintiff Studiorotan LLC*

**CERTIFICATE OF CONFERENCE**

Pursuant to Section II of the Initial Order (Doc. 24), undersigned counsel certifies that the parties conferred by telephone on July 13, 2026. Defendants' counsel indicated that Defendants oppose the requested extension. Counsel further conferred regarding Defendants' July 11, 2026 deficiency letter, and Plaintiff committed in writing on July 12, 2026, to serve corrected responses and supplemental production. The parties were unable to reach an agreement, necessitating this motion.

Respectfully submitted,

/s/ Gerard Lynn Truesdale
GERARD LYNN TRUESDALE
Gerard Lynn Truesdale (ASB-9517B00T)
Attorney Gerard L. Truesdale, PLLC
120 19th Street North, Suite 201
Birmingham, Alabama 35203
(205) 335-0072
gerardt@attorneytruesdale.com
*Counsel for Plaintiff Studiorotan LLC*

**CERTIFICATE OF SERVICE**

I hereby certify that on July 16, 2026, a true and correct copy of the foregoing Reply was filed with the Clerk of Court using the CM/ECF system, which will serve all counsel of record, including Douglas L. Bridges, Esq., counsel for Defendants.

Respectfully submitted,

/s/ Gerard Lynn Truesdale
GERARD LYNN TRUESDALE
Gerard Lynn Truesdale (ASB-9517B00T)
Attorney Gerard L. Truesdale, PLLC
120 19th Street North, Suite 201
Birmingham, Alabama 35203
(205) 335-0072
gerardt@attorneytruesdale.com
*Counsel for Plaintiff Studiorotan LLC*